NATIONWIDE MUTUAL INSURANCE COMPANY

v.

RICHARD HILL, ADMINISTRATOR OF THE
ESTATE OF REBECCA H. HENLEY, DECEASED

Record No. 921827

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

v.

RICHARD HILL, ADMINISTRATOR OF THE
ESTATE OF REBECCA H. HENLEY, DECEASED

Record No. 921836

January 7, 1994

Present: All the Justices

*Paul D. Fraim (Todd M. Fiorella; Jason E. Dodd; Heilig, McKenry, Fraim & Lollar,* on brief), for appellant. (Record No. 921827)

*Robert L. Samuel, Jr. (Stephen C. Swain; F. Geoffrey Glick; Clark & Sant,* on brief), for appellee. (Record No. 921827)

*Amicus Curiae:* (Christopher A. Meyer; Allen, Allen, Allen, & Allen, on brief), in support of appellee. (Record No. 921827)

*John G. Crandley (Preston, Wilson & Crandley,* on brief), for appellant. (Record No. 921836)

*Robert L. Samuel, Jr. (Stephen C. Swain; F. Geoffrey Glick; Clark & Stant,* on brief), for appellee. (Record No. 921836)

*Amicus Curiae:* (Christopher A. Meyer; Allen, Allen, Allen & Allen, on brief), in support of appellee. (Record No. 921836)

JUSTICE LACY delivered the opinion of the Court.

On March 27, 1987, Rebecca H. Henley was riding in an automobile driven by Mary Ann Forsyth. Forsyth collided with a vehicle driven by Martin W. Jones. Both Forsyth and Henley died as a result of the injuries they sustained in the accident.

Richard Hill, as guardian of the estate of Rebecca Henley, an incompetent,[1] filed a motion for judgment against Jones and Nicholas Themides, administrator of the estate of Mary Ann Forsyth (Them-

---

[1] As a result of the accident, Henley suffered permanent brain damage and was sustained by a life support system for several years. She died in November 1991.

ides), alleging that Henley's injuries were caused by the joint negligence of Jones and Forsyth. The jury returned a verdict against both Jones and Themides, for $12,000,000. The verdict was reduced to $1,000,000, the amount of the *ad damnum* clause, and, on October 18, 1991, the trial court entered judgment against Jones and Themides jointly and severally in that amount. That judgment is final.

At the time of the accident, the vehicle driven by Forsyth was owned by Paul J. Stafford and was insured under an automobile liability policy issued by Nationwide Mutual Insurance Company (Nationwide) to Stafford. Forsyth was driving the vehicle with Stafford's permission. Forsyth herself was an insured under an automobile liability policy issued by State Farm Mutual Automobile Insurance Company (State Farm). Neither Jones nor the vehicle he was driving was insured. Both State Farm and Nationwide paid the policy limits for liability coverage, $100,000 and $50,000, respectively.

In April 1992, Richard Hill, as administrator of the estate of Rebecca H. Henley, deceased (Hill), instituted the instant declaratory judgment action against Themides, State Farm, and Nationwide. Hill asked the court to declare that Henley was an insured under the uninsured motorist (UM) endorsements of both the State Farm and Nationwide policies and, therefore, was entitled to additional recovery under those policy provisions. The trial court granted Hill's motion for summary judgment, holding that Henley was an insured under the UM endorsement of the State Farm policy and that the set-off provisions of the Nationwide UM endorsement violated Code § 38.2-2206 and were void as against public policy. The final order, entered September 4, 1992, required State Farm and Nationwide to pay Hill $100,000 and $50,000, respectively, the policy limits for the UM coverages. We awarded both State Farm and Nationwide an appeal.

I. State Farm

▮ The UM endorsement of the State Farm policy defines an insured as "any other person while occupying an insured motor vehicle." An "insured motor vehicle" is defined as

a motor vehicle registered in Virginia with respect to which the bodily injury and property damage liability coverage of the policy applies but shall not include a vehicle while being used without the permission of the owner.

Hill's position at trial, and here, is that the vehicle in which Henley

was riding qualified as an "insured motor vehicle" because it was registered in Virginia, Forsyth was driving it with Stafford's permission, and the liability portion of the policy applied to it as shown by State Farm's payment of the policy limits for liability coverage. Applying the plain language of the policy, the trial court agreed with Hill and concluded that Henley was occupying an insured vehicle as defined in the policy and, therefore, qualified as an insured under the UM endorsement of the State Farm policy.

State Farm asserts that the trial court erred because this Court, in *Bayer v. Travelers Indemnity Co.*, 221 Va. 5, 267 S.E.2d 91 (1980), considered a UM endorsement containing the same language and determined that UM coverage was not available. State Farm's contention that the decision in *Bayer* controls the result here is correct only if all relevant policy provisions in both cases and the factual circumstances of both cases are substantially similar. As discussed below, while there are similarities, the facts and the policies are not identical and the distinctions between them make the holding in *Bayer* inapposite to this case.

In *Bayer,* Whitaker was driving Bayer's vehicle as part of a road test. Bayer was a passenger in the car. An uninsured motorist collided with Bayer's vehicle, which was also uninsured, injuring Bayer. Bayer sought coverage as an insured under the UM endorsement of Whitaker's liability policy.

The UM endorsement definitions considered in *Bayer* are identical to the definitions contained in the State Farm policy here. *Id.* at 8, 267 S.E.2d at 92. However, to determine whether these definitions were satisfied, providing UM coverage for Bayer, the Court in *Bayer* looked to other relevant portions of the policy.

The Court in *Bayer* held that at least two portions of the policy's provisions precluded coverage from Bayer under the UM endorsement. First, the Court concluded that only *owned* vehicles were covered by the policy. *Id.* at 8, 267 S.E.2d at 93. Although specific policy provisions were not recited in the opinion, the basis for this holding is clear from the record on file with the Court. The declarations page of Whitaker's policy contained a specific section addressing vehicles included for the purpose of the UM coverage. Only "automobiles owned by the Named Insured" were designated for insurance coverage under the UM endorsement and, therefore, the policy did not cover a vehicle owned by Bayer.

The Court in *Bayer* declined UM coverage for Bayer based on another portion of the policy's provisions. The UM endorsement in Whitaker's policy stated that it was subject to the insuring agreement.

That agreement provided liability coverage for use of a *non-owned* vehicle only when the insured, Whitaker, was legally obligated to pay damages. Whitaker was neither alleged nor found to be liable for Bayer's injuries. Therefore, the liability coverage relating to non-owned vehicles was not invoked, and Bayer's vehicle could not come within the definition of an insured vehicle. *Id.*

In this case, the State Farm policy did not limit the definition of the vehicle to one owned by the named insured, as the policy did in *Bayer;* nor did it include any language which would restrict the definition of "insured vehicle" to a vehicle identified or described in the policy provisions.[2] This basis for the result in *Bayer,* therefore, cannot support a similar result in the instant case.

As for policy coverage of non-owned vehicles, the provisions of the State Farm policy, like Whitaker's policy, provide liability coverage when an insured is a permissive user of a non-owned vehicle and is legally required to pay damages resulting from the use of the non-owned vehicle. However, unlike Whitaker, Forsyth was legally obligated to pay damages resulting from her use of that vehicle. This factual difference is a significant distinction between the two cases. Again, the basis for the conclusion reached in *Bayer* is inapposite here.

State Farm's sole basis for seeking a reversal of the trial court's judgment is its theory that the result in this case is dictated by *Bayer.* As demonstrated above, not only is *Bayer* inapposite here, applying the plain language of the policy to the facts of this case requires the conclusion reached by the trial court. Indeed, to hold otherwise would require us to rewrite the policy provisions. Accordingly, we will affirm that portion of the trial court's judgment holding that Henley was an insured under the UM endorsement of the State Farm policy.

## II. Nationwide

Nationwide does not dispute that Henley qualified as an insured for coverage under its UM endorsement. However, its UM endorsement includes provisions that require a set-off of payments received under liability coverage against recovery payable under UM coverage. Nationwide contends that if the set-off provisions are applied here it would have no further liability to Hill because the UM coverage limit is $50,000 and Hill has already received that amount under the liability coverage portion of the policy.

---

[2] The declaration sheet was not part of the record in this case.

In resolving issues of UM coverage, we apply the well-established principles that the legislation mandating UM coverage is remedial in nature, is to be liberally construed, and that, in the case of conflict between the provisions of the insurance policy and the statutory requirements, the statute controls. *Bryant v. State Farm Mutual Automobile Insurance Co.,* 205 Va. 897, 900, 140 S.E.2d 817, 819 (1965).

Nationwide concedes that the net effect of the set-off requirement is to limit the coverage under the policy to a total of $50,000 per person, regardless of whether the insured is recovering under the liability provision, the UM endorsement, or both. Nationwide asserts that this limitation does not violate Code § 38.2-2206 and is not void as against public policy, as the trial court held, because (1) Code § 38.2-2206 allows insurers to place limits on their liability for UM coverage, and (2) this Court has recognized the validity of contractual limitations restricting mandatory statutory insurance coverage.

Code § 38.2-2206 provides in pertinent part:

> [N]o policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, *within limits* not less than the requirements of § 46.2-100. Those limits shall equal but not exceed the limits of the liability insurance provided by the policy, unless the insured rejects the additional uninsured motorist insurance coverage. . . . (Emphasis added.)

Nationwide contends that the words "within limits," emphasized above, specifically authorize an insurer to limit the amount it must pay under UM coverage, as long as those limits do not fall below the $25,000 minimum amount required. *See* Code §§ 46.2-100, -472. Nationwide's policy limitation of $50,000 is in excess of the minimum amount required and equals the limits of the liability insurance provided by the policy. Therefore, Nationwide concludes, the limitation is valid.

Nationwide is correct in its reading of the statute, but incorrect in the conclusion it reaches about the impact of the statute upon the policy provisions at issue here. The statutory language requires that limitations on the amount of the payment made under the UM endorsement fall between a floor of $25,000 and a ceiling of the amount of the liability coverage. But allowing a limitation on *the*

*amount* paid, presumes that *some amount* will be paid. Nationwide's UM endorsement set-off requirement entirely eliminates payment under the UM portion of the policy. The language in Code § 38.2-2206 cannot be construed to permit elimination of UM coverage in this manner. We conclude that the reference to establishing limits on UM payments in Code § 38.2-2206 simply does not permit the imposition of the set-off provisions found in Nationwide's UM endorsement.

Nationwide next argues that the policy's set-off provisions nevertheless do not violate Code § 38.2-2206 or public policy because they are merely contractual limitations, like others relating to mandatory statutory insurance coverage, which this Court has upheld. The cases relied on by Nationwide in support of this position are inapposite. Each involves contract provisions relating to actions required of the insured to qualify for coverage under the policy: *e.g.,* cooperating with the insurer, *State Farm Mutual Automobile Ins. Co. v. Davies,* 226 Va. 310, 314, 310 S.E.2d 167, 169 (1983); providing timely notice to the insurer, *Lord v. State Farm Mutual Automobile Ins. Co.,* 224 Va. 283, 288, 295 S.E.2d 796, 799 (1982); and obtaining consent when settling with third parties, *Virginia Farm Bureau Mutual Ins. Co. v. Gibson,* 236 Va. 433, 437, 374 S.E.2d 58, 61 (1988). Here, there were no actions or omissions by the insured which, under the terms of the policy, abrogated recovery under the UM endorsement.

Nor does the rationale allowing policy provisions to limit the stacking of UM coverage support the set-off provisions, as Nationwide asserts. *See, e.g., Goodville Mutual Casualty Co. v. Borror,* 221 Va. 967, 275 S.E.2d 625 (1981). Prohibiting stacking of UM coverage does not eliminate all payment under the UM coverage as Nationwide's set-off provisions do here.

While we have not had the occasion to consider the precise set-off provisions at issue here, an analogous situation was presented in *Bryant,* 205 Va. 897, 140 S.E.2d 817. In that case, Bryant obtained an $85,000 judgment against an uninsured motorist. Bryant received $10,059 under the UM endorsement of a policy covering the vehicle he was driving. Bryant then sought to recover under the UM endorsement of his own automobile liability insurance policy. The insurer, State Farm, denied coverage based on the policy's provisions limiting recovery under the UM endorsement to amounts exceeding those available from "other insurance." Since the limit of Bryant's own UM coverage was $10,000 and Bryant had received that amount from "other insurance," State Farm argued it had no further liability under the UM endorsement.

In rejecting this argument, the Court in *Bryant* observed that the "other insurance" limitations in the State Farm policy obligates the insurer to pay the insured only sums that exceed other available insurance; but the UM statute requires payment of all the sums the insured is legally entitled to recover as damages. *Id.* at 901, 140 S.E.2d at 820. Accordingly, the *Bryant* Court held that the "other insurance" provision restricted the operation of the statute and conflicted with its terms.

 The only difference between the *Bryant* case and the instant case is that here the "other insurance" is not another policy, but a separate part of a single policy. We find no meaningful difference between a policy provision that eliminates the mandatory UM coverage by virtue of payments emanating from "other insurance" or by virtue of a separate portion of the same policy providing coverage for a different risk. Nationwide's set-off requirement in the UM endorsement, just as the "other insurance" in *Bryant*, "places a limitation upon the requirement of the statute and conflicts with the plain terms of the statute." *Id.* Accordingly, we will affirm that portion of the judgment of the trial court which held that the set-off provisions of Nationwide's UM endorsement are void as against public policy.

Record No. 921827 - *Affirmed.*
Record No. 921836 - *Affirmed.*

JUSTICE COMPTON, with whom JUSTICE WHITING and JUSTICE HASSELL join, dissenting in part.

In deciding the *State Farm* case, the majority has misinterpreted the applicable statute, misread the pertinent case law, and misconstrued the relevant provisions of State Farm's insurance policy.

Mary Ann Forsyth was operating a Buick automobile owned by Paul J. Stafford, in which Rebecca Henley was a passenger. Stafford's vehicle collided with a vehicle operated by Martin W. Jones, an uninsured motorist. Forsyth died as a result of the accident. Henley was seriously injured in the collision and later died from those injuries.

The Buick was covered by an automobile liability policy issued by Nationwide to Stafford as the named insured. At the time of the accident, Forsyth was the granddaughter of Wesley M. Forsyth and living in his household. State Farm had issued an automobile liability policy to Wesley M. Forsyth as the named insured covering a Comet automobile. Henley, the passenger, was neither a relative of, nor a resident of, the same household as Wesley M. Forsyth and, of course, the Comet was in no way involved in the accident.

After the judgment was obtained in behalf of Henley against both the estate of Mary Ann Forsyth and the uninsured motorist, State Farm paid its bodily injury liability limits on account of the judgment against Forsyth's estate. This payment was made because Forsyth's status at the time of the accident was that of a permissive user of a non-owned automobile (Stafford's Buick) as defined in the "Part I-Liability" portion of State Farm's policy.

Henley's administrator contends that because Mary Ann Forsyth, the Buick's operator, was a State Farm insured at the time of the accident, Rebecca H. Henley, solely by reason of her occupancy of the Buick, was also a State Farm insured, and thereby entitled to an additional payment under the uninsured motorist provisions of State Farm's policy. To permit such payment involves an unwarranted leap of logic that converts State Farm's uninsured motorist coverage to accident insurance, a result never intended by the uninsured motorist statute, Code § 38.2-2206, never authorized by the case law, *Nationwide Mut. Ins. Co.* v. *Harleysville Mut. Casualty Co.,* 203 Va. 600, 603, 125 S.E.2d 840, 843 (1962), and never contemplated by State Farm's contract with its named insured.

The General Assembly, in enacting the uninsured motorist statute, "intended to create two classes of insured persons, with different benefits accruing to each class." *Insurance Co. of N. Am.* v. *Perry,* 204 Va. 833, 836, 134 S.E.2d 418, 420 (1964). "The first class includes the named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either." *Id.* The second class is composed of any other person who is "occupying" an insured motor vehicle. *Cunningham* v. *Insurance Co. of N. Am.,* 213 Va. 72, 77, 189 S.E.2d 832, 835 (1972). These two classes are set forth in State Farm's uninsured motorist coverage in this case under "Uninsured Motorists Insurance (Virginia)...II. Persons Insured."

Rebecca H. Henley, as I have said, was not a resident relative of Wesley M. Forsyth's household. Thus, she does not become an insured under the State Farm uninsured motorist coverage as a member of the first class; the only potential avenue for coverage for Henley would be through coverage as a member of the second class.

The majority contends that Forsyth's operation of the Nationwide insured vehicle as a permissive user entitled her to *liability* coverage under Wesley M. Forsyth's State Farm policy, and therefore made the vehicle operated by Forsyth an insured motor vehicle under the State Farm policy, and made Henley, as an occupant of the vehicle, a person insured under State Farm's *uninsured motorist* coverage. That contention was specifically rejected in *Bayer* v. *Travelers Indem. Co.,* 221 Va. 5, 267 S.E.2d 91 (1980).

In *Bayer,* we construed policy language identical to that appearing in State Farm's policy. There, a claimant was a passenger in his own uninsured automobile during a collision with another uninsured vehicle. The claimant sought to recover under the uninsured endorsement of a liability policy written on other vehicles owned by the person driving the claimant's vehicle at the time of the accident. There, as here, the claimant sought to use the basic *liability* coverage protecting his driver individually during the operation of a non-owned automobile as a means of cloaking the claimant's vehicle with *uninsured motorist* coverage.

Affirming the trial court, we said in *Bayer* that the only coverage applying to the claimant's vehicle was that afforded the operator in the event he was legally liable for damages while driving the automobile and that the *liability* coverages did not extend to the *uninsured motorist* coverage. Consequently, we held, the claimant "was not an 'Insured' and his motor vehicle was not an 'Insured automobile' within the meaning of the uninsured motorist endorsement." *Id.* at 8-9, 267 S.E.2d at 92-93.

Thus, in the present case, under *Bayer,* the Buick operated by Forsyth was not an insured motor vehicle under State Farm's *uninsured motorist* endorsement. Henley, as neither a resident relative of Wesley M. Forsyth's household nor an occupant of an insured motor vehicle as intended in the State Farm uninsured motorist endorsement, was not a person insured under State Farm's policy. Hence, her administrator is not entitled to recover under State Farm's uninsured motorist endorsement.

Consequently, I would reverse the judgment of the trial court in the *State Farm* case and enter final judgment in favor of that insurer.