Bridget T. Brooks

v.

Robert Howard Steele
and Christopher Brooks

February 28, 1997

Case No. LA-931-3

BY JUDGE T. J. MARKOW

This case is before the Court pursuant to an order entered on July 19, 1996. The order stated that the case would be tried to a jury on the issue of liability alone and that the Court would determine the amount of damages at a subsequent hearing. On July 26, 1996, a jury found that Defendant Robert Steele and Defendant Christopher Brooks were both liable to Plaintiff Bridget Brooks. The parties have agreed that Plaintiff's recovery in this case shall be whatever amount of coverage is afforded to her under the various possible applicable insurance policies. In other words, Plaintiff's damages shall be fixed at the maximum sum she is legally entitled to under the insurance policies applicable to this incident and these factors.

## Facts

On April 14, 1993, Plaintiff was the owner/passenger of a 1990 Nissan automobile which was being operated with her permission by Defendant Christopher Brooks. While operating the vehicle, Christopher Brooks collided with a 1984 Plymouth automobile operated by Defendant Robert Steele. The Plymouth was owned by Robert Steele's mother, Rebecca Steele.

Plaintiff was severely injured in this collision and filed this action against both drivers alleging that the negligence of each caused her injury. The jury found both drivers liable for Plaintiff's injuries.

At the time of the accident, Plaintiff resided with, and was a member of the household of, her sister, Joan Parham. At the time of the accident, Christopher Brooks, resided with, and was member of the household of, his father, James Brooks. The policies in effect at the time of this accident and under consideration in this opinion are as follows:

| | | |
|---|---|---|
| 1. | Bridget Brooks (Plaintiff) | State Farm Policy $25,000 BI/UM |
| 2. | Christopher Brooks (Defendant) | State Farm Policy $50,000 BI/UM |
| 3. | Rebecca Steele (Mother of Defendant Steele) | Integon Policy $25,000 BI/UM |
| 4. | Joan Parham (Sister of Plaintiff) | GEICO Policy $25,000 BI/UM |
| 5. | James Brooks (Father of Defendant Brooks) | State Farm Policy $100,000 BI $50,000 UM |

*Liability Coverage*

The issues are to what extent is Ms. Brooks entitled to bodily injury coverage under any or all of the policies and to what extent is she entitled to uninsured/underinsured motorist coverage under any or all of the policies listed.

The coverage provided for bodily injury under the liability sections of the applicable policies are not the source of the conflict in this case. The truly contentious issue is to be discussed under the section of this opinion entitled "Underinsured Motorist Coverage." However, as the total award the Court shall make to the Plaintiff includes the liability figure as well, it bears a brief explanation.

## 1. *The Brooks Vehicle*

Defendant Brooks had insurance on an automobile owned by him at the time of the accident. That insurance covered bodily injury attributable to his negligence when he drove a non-owned vehicle with the permission of the owner. The parties stipulated that the vehicle being driven by Brooks was actually owned by Plaintiff and was being driven with her permission. Therefore, Plaintiff is entitled to the coverage from this State Farm policy issued to Defendant Brooks in the amount of $50,000.

Defendant Christopher Brooks was driving a 1990 Nissan. That car, as stated above, was owned by Plaintiff. Therefore, her own insurance policy, written by State Farm, applies to the accident. Plaintiff is afforded the coverage amount of $25,000.

Christopher Brooks was a resident in the household of his father, James Brooks, at the time of the accident. As stated above, he was driving a non-owned vehicle with the permission of the owner. Just as with his own insurance, his father's policy, also with State Farm, affords coverage under these circumstances. That coverage limit is $100,000.

The Court concludes that the Plaintiff is entitled to a total of $175,000 in liability coverage from these three insurance policies. The Court further concludes that, as to the Brooks vehicle, this is the extent of the liability coverage available to Plaintiff.

## 2. *The Steele Vehicle*

Defendant Steele was also covered by an insurance policy. As the driver of the 1984 Plymouth, owned by his mother, he is covered under his mother's policy with Integon. This is due to her ownership of the car, his being listed on the policy as a driver, as well as his being a member of the household. This policy affords a liability limit of $25,000.

### *Underinsured Motorist Coverage*

This has been the issue of contention between the parties. Most of the disagreements between the parties have focused on the appropriate method for calculating whether, and to what extent, underinsured motorist coverage should apply. Rather than addressing each of the concerns raised by the various actors individually, the Court will simply explain its method of calculating this sum, with relevant references to authority.

The statute of concern here is Va. Code Ann. § 38.2-2206. That provision, as it existed at the time of the accident, read:

> A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury ... coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury ... is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

Va. Code Ann. § 38.2-2206(B).

There have been several cases decided by the Supreme Court of Virginia which prove helpful in guiding this decision. Among these is the case of *USAA Casualty Ins. Co. v. Alexander*, 248 Va. 185 (1994). In that case, the Court was faced with three sources of uninsured motorist (UM) coverage (the plaintiff had a policy and lived in a household which contained two additional policies). There was only one source of liability coverage, from the defendant, the only party found liable. The Court there aggregated the UM coverage to find "the total amount of uninsured motorist coverage afforded any person injured," as the statute requires. This figure was then compared to the amount of "bodily injury ... coverage applicable to the ... motor vehicle," in that case, the one liability policy. Since the uninsured figure was a greater sum than the liability figure, the Court found that the vehicle being driven by the defendant was underinsured to the extent of the difference.

The opposite issue faced the Supreme Court in *Nationwide Mut. Ins. Co. v. Scott*, 234 Va. 573 (1988). In that case, there was only one source of uninsured motorist coverage (the plaintiff's own policy), but there were two sources of liability coverage (one from each of the two drivers). The Court concluded that the statutory provision dealt with each car independently of the other. In other words, the uninsured motorist coverage available to this plaintiff should be compared with the liability coverage available on a given automobile. The Court rejected the argument that the liability coverage should be aggregated (or stacked) before this comparison is made. It reasoned that had the legislature meant for that to be the appropriate calculation, it would have used plural language in the statute. Instead, as quoted above, the statute refers to "a motor vehicle" as being underinsured, and it calculates this by examining the liability coverage applicable through the use of "the motor vehicle." As such, the Court did not aggregate these limits before comparing the figures.

These two cases work together to set up a calculation method which determines the coverages applicable to this plaintiff. To determine whether,

and by how much, a plaintiff is afforded underinsurance coverage, the Court must calculate the total amount of uninsured motorist coverage which would have been available to the plaintiff had there been no liability coverage and compare this figure to the limits of the liability coverage available to the plaintiff one car at a time. As applied to this case, the Court first determines whether and to what extent the Brooks vehicle was underinsured; then whether and to what extent the Steele vehicle was underinsured.

## 1. The UM Coverage

As stated above, the total amount of liability coverage afforded Plaintiff under the policies applying to this vehicle is $175,000. To do the calculation now facing the Court, it must now determine the total uninsured motorist coverage which would have been available to the plaintiff under these facts.

The Bridget Brooks' State Farm policy affords UM coverage to the "named insured." She is a named insured, so she has $25,000 in coverage from this source. She also has coverage under her sister's policy. That policy, written by GEICO, affords coverage to Plaintiff as she was a resident of her sister's household, also making her an insured. This gives her an additional $25,000 in UM coverage, bringing the total up to $50,000.

She is also afforded UM coverage under both policies issued by State Farm to the Brooks men. Both policies include as "insureds" for UM purposes, "any other person while occupying an insured motor vehicle." State Farm Policies at 6520.7(II)(b). An insured motor vehicle "means a motor vehicle registered in Virginia with respect to which the bodily injury ... liability coverage of the policy applies but shall not include a vehicle while being used without the permission of the owner." State Farm Policies at 6520.7(V). Based on these definitions, the Brooks vehicle, with regard to this collision, was an insured motor vehicle, and Plaintiff was a person occupying an insured motor vehicle. Plaintiff is entitled to the UM coverage afforded under both of these policies, as well. Each policy provides $50,000 UM coverage. So, Plaintiff's total UM coverage comes to $150,000.

Before moving on, it should be noted that this same analysis was applied by the Supreme Court of Virginia in *Nationwide Mut. Ins. Co. v. Hill*, 247 Va. 78 (1994). In that case, the plaintiff was a passenger in one car which, due to the fault of both drivers, collided with another car. There the Court determined that the plaintiff was entitled to the UM coverage available under the defendant driver's policy because she was driving the passenger's vehicle with her permission and the other driver was uninsured.

In its analysis, the Court distinguished the *Hill* case from *Bayer v. Travelers Indem. Co.*, 221 Va. 5 (1980), in which the opposite result was reached. The Court held that the difference was that the policy in question specifically required that the insured vehicle be owned by the named insured. Additionally, the Court noted that in the *Bayer* case, the named insured under the policy was not legally required to pay damages. In other words, the liability provisions had not attached. Therefore, in *Bayer*, that UM coverage was not available.

The present case is more like *Hill*. Liability has been established. There is no restriction in the policies for "owned vehicles." The insurance companies attempt to distinguish the present case from *Hill* by pointing out that *Hill* dealt with finding UM coverage, while we are faced with an underinsurance calculation. This is of no matter as the underinsurance calculation requires the Court to determine how much UM coverage would be allowed if this were such a case. The UM coverage under Christopher Brooks' and James Brooks' policies are available as Plaintiff is an insured under these policies.

## 2. *The Brooks Vehicle*

The total UM coverage available to Plaintiff is $150,000. The total of the liability coverage available through the Brooks vehicle is $175,000. As this second figure is greater than the first, there is no underinsurance coverage available for Plaintiff concerning the Brooks vehicle.

## 3. *The Steele Vehicle*

Again, the total UM coverage available to Plaintiff is $150,000. The total of the liability coverage available through the Steele vehicle is $25,000. Therefore, the Steele vehicle is underinsured by $125,000. The Plaintiff is entitled to this figure, as well.

### *Summary*

Based on the policies available and in force at the time of the accident, the Plaintiff is entitled to a total of $200,000 (combining both vehicles' coverages) under the liability portions of the various policies. Additionally, Plaintiff is entitled to $125,000 in underinsured motorist coverage as the Steele vehicle was underinsured. This brings her total award to $325,000. As her *ad damnum* clause was for an amount greater than this figure, she is entitled to the full sum.