Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and Kinser, JJ., and Poff, Senior Justice

BERNARD J. TRISVAN, JR.

v. Record No. 962600    OPINION BY JUSTICE ELIZABETH B. LACY
                                    October 31, 1997

AGWAY INSURANCE COMPANY

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
James B. Wilkinson, Judge

In this appeal, we construe Code § 38.2-2206 to determine whether, in a single vehicle accident, the uninsured/ underinsured motorist (UM/UIM) endorsement of a tortfeasor's automobile liability insurance policy is to be considered when determining the extent to which the tortfeasor's motor vehicle is underinsured.

The facts are not in dispute. On April 9, 1994, Bernard J. Trisvan, Jr., was a passenger in a car driven by Marcus Wilson Smith. The car overturned, and Trisvan suffered injuries resulting in damages exceeding $125,000. Smith's vehicle was insured by Integon Indemnity Corporation (Integon), with policy limits of $25,000 per person for bodily injury liability and $25,000 per person UM/UIM coverage. Trisvan was insured under a family automobile policy issued to his father by Agway Insurance Company (Agway) with a limit of $100,000 for UM/UIM coverage.

Trisvan filed a personal injury action against Smith and served Agway as his underinsurance carrier. In settlement of the personal injury action, Integon paid Trisvan the $25,000 liability limit under Smith's policy. Agway then tendered Trisvan $75,000 and filed a declaratory judgment action seeking a ruling that $75,000 was the total amount it owed Trisvan under

Trisvan's UM/UIM policy. Trisvan, in his grounds of defense and counterclaim, asserted that the total amount of available UM/UIM coverage was $125,000 and, therefore, Agway was liable for $100,000 rather than $75,000. The trial court, on cross motions for summary judgment, concluded that Smith's vehicle was underinsured by $75,000, not $100,000, and that Trisvan was therefore only entitled to $75,000 from Agway. We awarded this appeal.

In this case, we are not concerned with construing the terms of an insurance policy to determine whether an applicant is entitled to recovery. Trisvan did not seek recovery from Integon under the terms of the UM/UIM endorsement in Smith's policy and counsel for Trisvan stated at oral argument that he could not recover under that portion of the policy because of the policy limits. The sole question here requires interpretation of a portion of § 38.2-2206, regarding the method for calculating the amount by which a vehicle is underinsured.

Since 1982, § 38.2-2206 has required that automobile liability insurance policies issued in Virginia include an endorsement which obligates the insurer to pay the insured for damages caused by the operation or use of an underinsured motor vehicle. Subsection (B) of that section provides that a motor vehicle is considered underinsured:

when, and to the extent that, the total amount of
bodily injury and property damage coverage applicable
to the operation or use of the motor vehicle and
available for payment for such bodily injury or
property damage, . . . is less than the total amount of

2

uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

Trisvan asserts that, in construing this provision, the legislature's use of the word "total" commands that even in a single car accident the driver's UM/UIM coverage always be stacked onto other UM/UIM coverage. According to Trisvan, the purpose of the 1982 amendments to § 38.2-2206 was to "increase the total protection afforded to insurance claimants injured by negligent motorists. See Nationwide Mutual Insurance v. Scott, 234 Va. 573, 363 S.E.2d 703 (1988)." Therefore, Trisvan reasons, the General Assembly must have intended that, in calculating the extent to which a vehicle is underinsured, a driver's UM/UIM insurance would be considered to be "afforded" to his passengers even if the driver is the sole tortfeasor. We disagree.

The increased insurance protection for injured claimants, to which Trisvan refers, was not an arbitrary expansion of recovery options. The 1982 amendments were enacted in response to a specific anomaly which had arisen following the adoption of mandatory uninsured motorist endorsements in automobile liability insurance policies. As explained in Scott, a person injured by an uninsured motorist could realize greater financial protection than if injured by an insured motorist, where the injured party had elected uninsured motorist coverage in an amount greater than the liability limits of the insured tortfeasor. 234 Va. at 575-76, 363 S.E.2d at 704. The General Assembly in mandating the underinsurance endorsement corrected this anomaly by allowing a

claimant to access the "over-insurance" in his UM/UIM endorsement, even if the tortfeasor was insured. This legislation was not enacted to expand protection to injured parties generally.

Trisvan's construction of § 38.2-2206(B), requiring the UM/UIM endorsement applicable to the tortfeasor's motor vehicle to be stacked onto other available UM/UIM coverage, is also at odds with other portions of § 38.2-2206. Subsection (A) of that section states that the underinsurance endorsement must "obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle." The reference to damage caused by "an uninsured motor vehicle" contemplates the existence of two motor vehicles, not the single vehicle suggested by Trisvan, when read in the context of the entire subsection. Subsection (A) provides that the amount of UM/UIM coverage can either be equal to or less than the amount of the liability coverage. It may not, in any case, exceed the amount of the liability coverage. Thus, when comparing the amounts of liability and UM/UIM coverage in the tortfeasor's policy applicable to his motor vehicle, that vehicle could not be "an underinsured motor vehicle."[1]

The provisions of subsection (G) of § 38.2-2206 provide another example of the General Assembly's intentions regarding

---

[1] Compare Nationwide Mut. Ins. Co. v. Hill, 247 Va. 78, 439 S.E.2d 335 (1994)(UM/UIM recovery allowed where two vehicles involved).

4

the use of UM/UIM coverage.  That section gives the insurer a right of subrogation for the UM/UIM payment against the person causing the injury.  Applying Trisvan's rationale, the insurer would have a subrogation right against its insured, the negligent driver.  We do not believe the General Assembly intended such a result when it sought to eliminate the anomaly discussed above and allowed an insured to access its UM/UIM insurance coverage when injured by an underinsured motor vehicle.

Finally, our interpretation of § 38.2-2206(B) is consistent with the views of other courts in this regard.  Policy provisions prohibiting recovery under both the liability and UM/UIM portions in a single vehicle accident have been upheld on both statutory and public policy grounds.  See, e.g., Fidelity & Cas. Co. v. Streicher, 506 So.2d 92 (Fla. Dist. Ct. App. 1987), review denied, 515 So.2d 231 (Fla. 1987); Myers v. State Farm Mut. Auto. Ins. Co., 336 N.W.2d 288 (Minn. 1983); Millers Cas. Ins. Co. of Texas v. Briggs, 665 P.2d 891 (Wash. 1983).

For these reasons, we hold that in applying § 38.2-2206(B), a passenger injured in a single vehicle accident is not entitled to include the UM/UIM coverage contained in the tortfeasor's automobile liability insurance policy when determining the extent to which the tortfeasor's vehicle was underinsured.  Accordingly, we will affirm the judgment of the trial court holding that Agway's total liability to Trisvan is $75,000.

Affirmed.

5

JUSTICE COMPTON, with whom JUSTICE KINSER joins, concurring.

I agree with the result of this appeal. However, I cannot subscribe to the rationale employed by the majority to reach the result.

In deciding this case, one must be careful to recognize the distinctions among bodily injury liability insurance coverage, uninsured motorist coverage for bodily injury, and underinsurance motorist coverage for bodily injury.

On April 9, 1994, Trisvan, the claimant, was a passenger in a motor vehicle operated by Smith, the tortfeasor. The vehicle left the road because of the alleged negligence of the tortfeasor and overturned injuring the claimant. No other vehicle was involved in the accident.

At the time, the vehicle operated by the tortfeasor was insured by Integon Indemnity Corporation. The policy had bodily injury liability limits of $25,000 for each person injured and a like amount of uninsured and underinsured motorist coverage for bodily injury. Those were the minimum limits required by the applicable financial responsibility statute. Code § 46.2-472(3). Thus, the tortfeasor's vehicle was not an uninsured motor vehicle.

The claimant qualified as an insured under a "Family Automobile Policy" issued to his parents by Agway Insurance Company. As relevant here, that policy contained an endorsement for uninsured motorist coverage for bodily injury and an

6

endorsement for underinsured motorist coverage for bodily injury with a single limit of $100,000 for each person.

The claimant's injuries resulted in damages exceeding $125,000. Thus, Integon paid the claimant the limits of $25,000 under its bodily injury liability coverage. Agway paid the claimant $75,000 under its uninsured/underinsured motorist coverage for bodily injury, claiming that was the full sum it owed.

The claimant contends he is entitled to collect a total of $100,000 from Agway. This declaratory judgment proceeding ensued, and was decided in favor of Agway on cross motions for summary judgment.

The controversy must be resolved by determining the amount that the claimant's vehicle was underinsured under Code § 38.2-2206(B). According to the statute, a motor vehicle is underinsured "when, and to the extent that, the total amount of bodily injury . . . coverage applicable to the operation or use of the motor vehicle . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle."

Here, the tortfeasor's vehicle was an insured motor vehicle, not an uninsured motor vehicle under the Integon policy. Thus, the uninsured motorist coverage for the tortfeasor's vehicle was not coverage "afforded" the claimant. In other words, the $25,000 Integon uninsured motorist limit may not be added when

computing "the total amount" of "coverage" referred to in the statute to determine the extent to which the claimant's vehicle was underinsured.

Therefore, because the tortfeasor was insured, there is $75,000 underinsured motorist coverage available to the claimant. Combining Integon's payment of its liability limits of $25,000 with Agway's payment of $75,000 means that the claimant has received a sum equal to his uninsured motorist limit of $100,000. A contrary ruling, viz., that a tortfeasor's uninsured motorist coverage is always applicable when determining the amount of underinsured motorist coverage available to an injured claimant, would render meaningless the distinction in coverage available under the uninsured or underinsured provisions of a policy or the statute. In sum, the claimant is not entitled to assume that the tortfeasor's vehicle is uninsured in order to be able to use Integon's uninsured motorist coverage when computing available underinsured motorist coverage.

For the foregoing reasons, I would affirm the trial court's judgment that Agway has fully discharged its lawful obligation to the claimant.