AGEE, Circuit Judge:
 

 Carlos Bolanos Castillo was killed and Marco A. Gabarette was injured in a motor vehicle accident during the course of their employment. Castillo's estate and Gabarette filed declaratory judgment actions seeking coverage under the uninsured/underinsured motorists endorsement of a third party's insurance policy for payment of the wrongful death and personal injury damages from the accident. The district court held that the policy did not extend coverage to Castillo's estate or Gabarette and granted summary judgment to the insurer. They now appeal. Because the plain language of the policy supports the district court's determination, we affirm the judgment of the district court.
 

 I.
 

 Purnell Furniture Services, Inc. ("Purnell"), a Virginia company, hired Castillo
 and Gabarette (collectively, the "Plaintiffs") as independent contractors to deliver furniture in northern Virginia.
 
 [1]
 
 Purnell regularly hired such independent contractors to deliver its furniture in the contractors' vehicles. For this particular delivery, the originally scheduled contractors were unable to fulfill the order, and Purnell inquired whether the Plaintiffs could do the job. Due to Purnell's last-minute request, the Plaintiffs did not have a sufficient vehicle available, so Purnell permitted them to use a truck for that delivery that Purnell had rented from Penske.
 

 Gabarette drove the truck with Castillo as passenger. En route to their destination, they pulled over on the side of the interstate so Castillo could check on the security of the furniture load. Another driver then struck the rented Penske truck, killing Castillo and injuring Gabarette.
 
 [2]
 

 At the time of the accident, Purnell had a motor vehicle insurance policy (the "Policy") issued by Employers Insurance Co. of Wausau ("Wausau"), which includes an uninsured/underinsured motorists ("UIM")
 
 [3]
 
 endorsement as required by the applicable state law of Virginia.
 
 See
 

 Va. Code Ann. § 38.2-2206
 
 (A) ;
 
 see also
 

 id.
 

 § 38.2-2206(B) (mandating that UIM coverage extend to "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured"). The Policy's "Schedule of Coverages and Covered Autos" (i.e., the "Declarations Pages" or "Schedule") lists the insurance coverages that Purnell purchased. These coverages are identified on the Declarations Pages as limited "to those autos shown as covered autos." J.A. 68.
 
 [4]
 
 Covered autos are designated by a code listed next to a particular coverage on the Schedule, and the "Motor Carrier Coverage Form" defines each code. Under the Schedule, the Policy extends liability coverage to all autos designated by code "61," which is defined as "Any Auto" on the Motor Carrier Coverage Form. J.A. 134. However, for UIM coverage-as opposed to liability coverage-the Schedule restricts covered autos to those designated by code "62," which the Motor Carrier Coverage Form defines as "Owned Autos Only." J.A. 134. The Policy lists only three vehicles on the "Schedule of Covered Autos You Own," none of which are the rented Penske truck.
 

 The Declarations Pages also reference the UIM endorsement for the limits of that particular coverage, which provides that Wausau would "pay in accordance with the Virginia Uninsured Motorists Law, all sums the insured is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." J.A. 105. For UIM purposes, an insured party is defined as "[a]nyone ... occupying a covered auto." J.A. 105. The
 UIM endorsement defines "covered auto" as "a motor vehicle, or a temporary substitute, with respect to which the bodily injury or property damage liability coverage of the policy applies." J.A. 104.
 

 Castillo's estate and Gabarette filed separate suits against the alleged negligent driver in the Fairfax County, Virginia, Circuit Court.
 
 [5]
 
 Because of the driver's limited insurance coverage, the Plaintiffs also brought an action in the same state court against Wausau for a declaration as to UIM coverage under the Policy and their entitlement to that coverage. Wausau removed the declaratory judgment action to the U.S. District Court for the Eastern District of Virginia on the basis of diversity jurisdiction pursuant to
 
 28 U.S.C. § 1332
 
 . Wausau and Castillo's estate filed cross-motions for summary judgment.
 
 [6]
 

 The district court granted Wausau's motion for summary judgment and denied Castillo's estate's motion regarding UIM coverage.
 
 [7]
 
 Applying Virginia law, the district court analyzed the Policy and held that the plain language of its terms dictated that the UIM coverage applied only to those vehicles that Purnell owned. Because Purnell did not own the Penske truck, it was not a "covered auto," and therefore the Plaintiffs were not entitled to UIM coverage.
 

 The Plaintiffs filed a timely notice of appeal, and we have jurisdiction pursuant to
 
 28 U.S.C. § 1291
 
 .
 

 II.
 

 We review a district court's decision to grant summary judgment de novo.
 
 OpenRisk, LLC v. Microstrategy Servs. Corp.
 
 ,
 
 876 F.3d 518
 
 , 527 (4th Cir. 2017). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party ... is entitled to judgment as a matter of law."
 

 Id.
 

 The facts in this case are not in dispute.
 

 Because this case was removed to federal court pursuant to diversity jurisdiction, we apply Virginia law, which governs any substantive issues.
 
 Stahle v. CTS Corp.
 
 ,
 
 817 F.3d 96
 
 , 99-100 (4th Cir. 2016) ("Because federal jurisdiction in this matter rests in diversity, our role is to apply the governing state law."). Courts in Virginia apply traditional principles of contract interpretation when reviewing insurance policies.
 
 TravCo Ins. Co. v. Ward
 
 ,
 
 284 Va. 547
 
 ,
 
 736 S.E.2d 321
 
 , 324 (2012). The intent of the parties is the focus of the inquiry.
 

 Id.
 

 at 325
 
 . A court will construe unambiguous terms of the policy according to their plain meaning.
 

 Id.
 

 Importantly, no contract provision "will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly."
 

 Id.
 

 Indeed, "[e]ach phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein."
 

 Id.
 

 ;
 
 accord
 

 Nationwide Mut. Ins. Co. v. Akers
 
 ,
 
 340 F.2d 150
 
 , 154 (4th Cir. 1965) ("To construe each clause or endorsement in isolation and without reference to the other policy provisions
 would do violence to basic contract law for insurance contracts, like other contracts, must be read and construed as a whole and not piecemeal.").
 

 If an insurance policy
 
 is
 
 ambiguous, however, it is ordinarily construed against the insurance company.
 
 St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.
 
 ,
 
 227 Va. 407
 
 ,
 
 316 S.E.2d 734
 
 , 736 (1984) ("The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer."). The insurer has the burden of proving lack of coverage.
 
 Ward
 
 ,
 
 736 S.E.2d at 325
 
 .
 

 In this case, the plain language of the Policy resolves the issue. In construing similar insurance policy provisions, the Supreme Court of Virginia has been clear that the designating language of the declarations page determines the applicability of UIM coverage.
 
 Bayer v. Travelers Indem. Co.
 
 ,
 
 221 Va. 5
 
 ,
 
 267 S.E.2d 91
 
 , 91 (1980) (per curiam) (answering in the negative "the question [of] whether a claimant, injured while a passenger in his own uninsured automobile during a collision with another uninsured vehicle, may recover under the uninsured motorist endorsement of a liability policy written on other vehicles owned by the driver of the claimant's automobile");
 
 see
 

 Nationwide Mut. Ins. Co. v. Hill
 
 ,
 
 247 Va. 78
 
 ,
 
 439 S.E.2d 335
 
 , 337 (1994) (explaining that, in
 
 Bayer
 
 , "[t]he declarations page of [the] policy contained a specific section addressing vehicles included for the purpose of the UM coverage," which the
 
 Bayer
 
 court relied on for its holding);
 
 see also
 

 Akers
 
 ,
 
 340 F.2d at 154
 
 (holding that a Virginia UIM endorsement "must be construed with other provisions of the policy in which the uninsured motorist endorsement is incorporated" and therefore concluding that UIM "coverage is restricted to those automobiles described in the declarations").
 

 The Supreme Court of Virginia's decisions in
 
 Bayer
 
 and
 
 Hill
 
 control our decision here. In
 
 Bayer
 
 , the plaintiff, Bayer, was riding as a passenger in his own uninsured vehicle, which was driven by Whitaker, who did have an automobile insurance policy with UIM coverage.
 
 267 S.E.2d at 91-92
 
 . The two men were "road testing the vehicle" when they were in an accident with another driver whose car was also uninsured.
 

 Id.
 

 at 92
 
 . Of the three men, only Whitaker had insurance, so Bayer sought to establish UIM coverage under Whitaker's insurance policy for injuries Bayer sustained in the accident.
 

 Id.
 

 The UIM endorsement of Whitaker's policy extended coverage to "any ... person while occupying an insured automobile."
 

 Id.
 

 The term "insured automobile" was defined as "an automobile registered in Virginia with respect to which the bodily injury and property damage liability coverages of the policy apply."
 

 Id.
 

 Bayer contended that his case depended upon resolution of the issue of "whether the vehicle in which he was riding was an insured automobile within the meaning of the endorsement."
 

 Id.
 

 He argued that, because Whitaker was a named insured under the policy and was driving Bayer's vehicle with permission, "the omnibus provisions of Whitaker's policy afforded Whitaker protection in the operation of the automobile."
 

 Id.
 

 And because Whitaker was protected while in Bayer's automobile for liability purposes, Bayer was "the occupant of an automobile with respect to which the bodily injury and property damage liability
 coverages of the policy apply."
 

 Id.
 

 In other words, because "Whitaker's liability coverage followed Whitaker into the Bayer vehicle, ... the vehicle thereby became insured" for UIM purposes.
 

 Id.
 

 The Supreme Court of Virginia disagreed with Bayer. First, the court held that the policy "was issued to Whitaker individually and covered two described motor vehicles."
 

 Id.
 

 at 93
 
 . Next, the court noted that the UIM endorsement "was subject to the insuring agreements of the automobile and garage liability provisions of the policy; they covered Whitaker's use of a non-owned automobile only if Whitaker became legally obligated to pay damages."
 

 Id.
 

 And finally, Bayer "did not qualify as a person insured under any of the basic liability provisions of the policy."
 

 Id.
 

 As relevant to the case now before us, the Supreme Court of Virginia later clarified its
 
 Bayer
 
 holding in
 
 Hill
 
 :
 

 The UM endorsement definitions considered in
 
 Bayer
 
 are identical to the definitions contained in the [insurance] policy here. However, to determine whether these definitions were satisfied, providing UM coverage for Bayer, the Court in
 
 Bayer
 
 looked to other relevant portions of the policy.
 

 The Court in
 
 Bayer
 
 held that at least two portions of the policy's provisions precluded coverage from Bayer under the UM endorsement. First, the Court concluded that only
 
 owned
 
 vehicles were covered by the policy. Although specific policy provisions were not recited in the opinion, the basis for this holding is clear from the record on file with the Court. The declarations page of Whitaker's policy contained a specific section addressing vehicles included for the purpose of the UM coverage. Only "automobiles owned by the Named Insured" were designated for insurance coverage under the UM endorsement and, therefore, the policy did not cover a vehicle owned by Bayer.
 

 439 S.E.2d at 337
 
 .
 
 [8]
 

 Here, as in
 
 Bayer
 
 , the Declarations Pages of the Policy limit the UIM coverage to only certain automobiles: code 62 autos. The Motor Carrier Coverage Form defines code 62 as "Owned Autos Only." J.A. 134. Because the Penske truck is not listed in the Policy as one of the owned vehicles, there is no UIM coverage related to it under the Policy. This result is plainly required by not only the
 
 Bayer
 
 decision but by the clear public policy of Virginia as to UIM insurance coverage. Indeed, "[i]n Virginia, uninsured motorist coverage is meant to protect an insured motorist, his family and permissive users of
 
 his vehicle
 
 against the peril of injury by an uninsured wrongdoer, not to provide insurance coverage upon each and every uninsured vehicle to everyone."
 
 Bayer
 
 ,
 
 267 S.E.2d at 93
 
 (emphasis added).
 
 [9]
 

 The thrust of the Plaintiffs' case is that the required UIM endorsement has a definition of "covered auto" that is broader than the UIM limitation of the Policy's Declarations Pages. However, the Supreme
 Court of Virginia rejected a similar argument in
 
 Bayer
 
 . Moreover, Virginia follows the well-settled principle in contract law of applying specific provisions of a contract over more general provisions dealing with the same subject matter.
 
 Appalachian Reg'l Healthcare v. Cunningham
 
 ,
 
 294 Va. 363
 
 ,
 
 806 S.E.2d 380
 
 , 385 n.9 (2017) ("When two provisions of a contract conflict with one another, and one provision specifically addresses the dispute at hand while the other remains general, we have consistently held that the specific provision will govern over the general."). Comparing the two provisions at issue in this case, the Policy's Declarations Pages place limitations on UIM coverage that are more specific than the generic UIM endorsement which, according to the Plaintiffs, provides coverage to any vehicle covered by the Policy whatsoever.
 
 See
 
 id.
 

 The Plaintiffs' view is simply not consonant with Virginia law.
 

 To this end, another Supreme Court of Virginia case is on point:
 
 Stone v. Liberty Mutual Insurance Co.
 
 ,
 
 253 Va. 12
 
 ,
 
 478 S.E.2d 883
 
 (1996). In
 
 Stone
 
 , the plaintiff was an employee of a restaurant who made pizza deliveries in his own vehicle.
 

 Id.
 

 at 883
 
 . While making a delivery, he was injured in an accident with another driver.
 

 Id.
 

 That driver's insurance policy limits were inadequate to fully compensate Stone for his injuries, so he sought UIM coverage under the restaurant's automobile insurance policy.
 

 Id.
 

 The terms of the restaurant's policy limited UIM coverage to "include only those autos [the restaurant] owns."
 

 Id.
 

 at 884
 
 . Stone argued that, because his vehicle was covered by the liability provisions of the restaurant's policy, which extended liability coverage to certain non-owned vehicles, Virginia law required the insurer to extend UIM coverage to him regardless of the policy's defined terms for UIM coverage.
 

 Id.
 

 ;
 
 see
 

 Va. Code Ann. § 38.2-2206
 
 (B) (defining an "Insured" person for UIM purposes in part as "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured"). Therefore, Stone contended that the policy's limiting UIM coverage to certain owned vehicles was invalid.
 
 478 S.E.2d at 884
 
 . The insurer, on the other hand, argued that it could "limit who is an insured without violating the provisions of subsection (B) of the statute."
 

 Id.
 

 at 885
 
 .
 

 The Supreme Court of Virginia agreed with the insurer, holding that the UIM statute did not "require that all the same vehicles and insureds be covered under both liability and uninsured motorist coverages of the same policy."
 

 Id.
 

 Instead, the statute mandated only "that uninsured motorist coverage be provided to those who are in ... the motor vehicles listed in the policy, as opposed to any vehicle to which the policy might apply."
 

 Id.
 

 at 886
 
 .
 

 Stone
 
 refutes the Plaintiffs' argument here and weighs in favor of Wausau. Like the restaurant's policy in
 
 Stone
 
 , the Policy here specifically limits UIM coverage to owned vehicles, while extending liability coverage to certain non-owned vehicles. The Plaintiffs seek to use the broad language in the endorsement to support UIM coverage despite this limitation, but the limitation is clearly permitted by Virginia state law, as
 
 Stone
 
 plainly held. The Plaintiffs therefore cannot use the broad language in the UIM endorsement to gain UIM coverage.
 

 Failing on that argument, the Plaintiffs also contend that the Policy's provisions here are nonetheless ambiguous and that the Policy should be construed against Wausau. Although ambiguous provisions are ordinarily construed against the insurer, the reason for this preference is that insurance companies are typically
 the drafters of insurance policies.
 
 Appalachian Reg'l Healthcare
 
 ,
 
 806 S.E.2d at
 
 386 n.10 (noting that the "principle that insurance policies should be interpreted in favor of insureds" "exists in part because insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders"). But here, the generic UIM endorsement is solely the creation of the Virginia State Corporation Commission ("SCC"), which requires the endorsement for every motor vehicle policy issued in Virginia. In contrast, the Policy's Declarations Pages, which were written by Wausau, have no ambiguity as the covered autos provision is clear: there is no UIM coverage for the non-owned Penske truck. In that circumstance, "[t]he interpretative presumption favoring insureds ... plays no role in our analysis."
 

 Id.
 

 The Policy's UIM endorsement is word-for-word the same as the form required by the SCC.
 
 Compare
 
 Va. State Corp. Comm'n,
 
 Uninsured Motorists Endorsement (Virginia)
 
 (2002), https://www.scc.virginia.gov/boi/co/pc/auto/ca/CA21211102.pdf (saved as ECF opinion attachment),
 
 with
 
 J.A. 104-07. Because the SCC adopted this form, Wausau was
 
 required
 
 to use it.
 
 See
 

 Va. Code Ann. § 38.2-2220
 
 (stating that, "after any standard form is adopted by the [SCC], no insurer shall use any form covering substantially the same provisions contained in the standard form unless it is in
 
 the precise language
 
 of the form filed and adopted by the [SCC]" (emphasis added) );
 
 see also
 
 J.A. 477 (district court stating, "The UM/UIM Endorsement is a standard form promulgated by the Virginia State Corporation Commission."); Opening Br. 24 (conceding that the UIM endorsement "is a standard form promulgated by the Virginia Corporation Commission"). It would be illogical to penalize an insurance company for using a form it is required to use by law, especially when the highest court of the state has directly held that an insurance company may limit the vehicles that are subject to UIM coverage under the required endorsement.
 
 See
 

 Stone
 
 ,
 
 478 S.E.2d at 885-86
 
 (holding that insurance policies may limit UIM coverage to owned vehicles without violating state law). And unlike the government-mandated UIM endorsement, the Declarations Pages were a result of contract negotiations by the parties. "This language which the parties[ ] contracted to cannot simply be ignored."
 
 Bartolomucci v. Fed. Ins. Co.
 
 ,
 
 289 Va. 361
 
 ,
 
 770 S.E.2d 451
 
 , 455 (2015).
 

 Finally, the Plaintiffs rely on a case that they did not cite below:
 
 Seals v. Erie Insurance Exchange
 
 ,
 
 277 Va. 558
 
 ,
 
 674 S.E.2d 860
 
 (2009). If anything,
 
 Seals
 
 supports the rationale of the district court in the case at bar. In
 
 Seals
 
 , the plaintiff "was injured in an accident with an underinsured driver while test driving a vehicle owned by [a dealership]."
 

 Id.
 

 at 861
 
 . The dealership's UIM coverage had a provision similar to the one in this case stating that it covered anyone "occupying a covered auto."
 

 Id.
 

 And, as in the standard UIM endorsement form in this case, the endorsement in
 
 Seals
 
 defined "covered auto" as "a motor vehicle ... with respect to which the bodily injury or property damage liability coverage of the policy applies."
 

 Id.
 

 The trial court looked to the liability provision of the policy, which stated that liability coverage was not available to customers of the dealership who have their own auto insurance.
 

 Id.
 

 On appeal, analyzing the plain language of the policy, the Supreme Court of Virginia determined that the trial court "incorrectly focused on whether [the plaintiff], as the driver of the vehicle, was entitled to liability coverage to determine if he was entitled to underinsured motorist coverage."
 

 Id.
 

 at 863
 
 . Instead, the proper course was to look to the declarations page, which showed the automobile being test driven was covered by
 the dealership's policy for liability.
 

 Id.
 

 Because the UIM endorsement provided coverage to occupants of those
 
 vehicles
 
 named on the declarations page with liability coverage, regardless of whether the occupants themselves had liability coverage under the policy, the test-driven vehicle was a covered auto, and the plaintiff was thus entitled to UIM coverage.
 

 Id.
 

 at 863-64
 
 .
 

 Seals
 
 is in concert with our conclusion here, as both cases are resolved by the plain language of the respective declarations pages. Although the court in
 
 Seals
 
 followed the language used in the UIM endorsement-the same language used in this case-it was the declarations page that identified the vehicles that were covered under the UIM endorsement. Thus,
 
 Seals
 
 is of no benefit to the Plaintiffs.
 

 The dissent's reading of the Policy would lead to absurdity, potentially with disastrous results for Virginia insurers and insureds alike. Virginia courts will not read contracts to produce absurd results.
 
 Transit Cas. Co. v. Hartman's, Inc.
 
 ,
 
 218 Va. 703
 
 ,
 
 239 S.E.2d 894
 
 , 896 (1978) ("While any ambiguity must be resolved against the insurer, the construction adopted should be reasonable, and absurd results are to be avoided."). There is no way to cabin the dissent's interpretation to this case only, mainly because the UIM endorsement is a standard, required form. Because the parties are required to use the UIM endorsement form, a policy would automatically extend UIM coverage to every vehicle to which it extended liability coverage: a public policy choice made at no place in Virginia law. For example, if an auto insurance policy provides liability coverage to hired or borrowed vehicles-as the Policy does,
 
 see
 
 J.A. 70-then by the dissent's reasoning those vehicles must be covered by the UIM endorsement even where the parties bargain to exclude that coverage, as the Declarations Pages and premium record show here. This is an absurd result and one not in line with the Supreme Court of Virginia's ruling in
 
 Stone
 
 (the dissent's discussion of which is relegated to a footnote).
 
 See
 

 478 S.E.2d at 885
 
 (holding that Virginia's UIM statute does not "require that all the same vehicles and insureds be covered under both liability and uninsured motorist coverages of the same policy").
 

 As a court sitting in diversity, we are bound to apply state law, not create it, as the dissent would do.
 
 Stahle
 
 ,
 
 817 F.3d at 99-100
 
 . So when the Supreme Court of Virginia holds that parties may contract to limit UIM coverage to certain vehicles,
 
 Stone
 
 ,
 
 478 S.E.2d at 885
 
 , and that courts should look to the declarations page to determine which vehicles have UIM coverage,
 
 Bayer
 
 ,
 
 267 S.E.2d at
 
 93 ;
 
 Hill
 
 ,
 
 439 S.E.2d at 337
 
 , we cannot by fiat compel UIM coverage for non-owned vehicles when an insurer and insured contract to limit that coverage to only owned vehicles.
 

 As previously noted, Virginia law permits the insurer to limit UIM coverage to owned vehicles via the declarations page, despite the inclusive wording of the SCC-mandated UIM endorsement.
 
 See
 

 Stone
 
 ,
 
 478 S.E.2d at
 
 886 ;
 
 Hill
 
 ,
 
 439 S.E.2d at 337
 
 . Wausau so limited the UIM coverage in this case, and the district court properly followed the terms of the Policy to award summary judgment to it.
 

 III.
 

 For these reasons, the judgment of the district court is
 

 AFFIRMED
 
 .
 

 For convenience, we include Castillo's estate within the "Plaintiffs" definition and only distinguish between Castillo and his estate where indicated.
 

 Bruce Levine brought the current action as administrator of Castillo's estate and is the proper party before the Court.
 

 Virginia law treats uninsured and underinsured coverages similarly, so case law that applies to one applies to the other as well.
 
 See
 

 Seals v. Erie Ins. Exch.
 
 ,
 
 277 Va. 558
 
 ,
 
 674 S.E.2d 860
 
 , 863 n.2 (2009) ("While previous cases have distinguished uninsured motorist coverage from liability coverage, those distinctions equally apply to underinsured motorist coverage, which is a similar concept...."). We designate "uninsured/underinsured motorists" as "UIM" for convenience.
 

 We have omitted alterations, citations, footnotes, and internal quotation marks here and throughout this opinion, unless otherwise noted.
 

 These suits were not resolved before the initiation of this case, and we are unaware of any resolution.
 

 Wausau filed a motion for summary judgment on all claims by the Plaintiffs. Castillo's estate filed a cross-motion for summary judgment on its claims against Wausau. Although Gabarette defended himself against Wausau's motion, he did not file his own motion for summary judgment.
 

 The district court also addressed several additional issues that are not before the Court in this appeal.
 

 In
 
 Hill
 
 , the Supreme Court of Virginia held that the plaintiff was entitled to UIM coverage because the insurance policy "did not limit the definition of the vehicle to one owned by the named insured, as the policy did in
 
 Bayer
 
 ; nor did it include any language which would restrict the definition of 'insured vehicle' to a vehicle identified or described in the policy provisions."
 
 439 S.E.2d at 337-38
 
 . The court noted that the declarations page was not part of the record in the case before it.
 

 Id.
 

 at 338 n.2.
 

 In addition, the record contains no evidence that Purnell ever paid a premium for UIM coverage for rented vehicles.
 
 See
 
 J.A. 70-71 (hired autos schedule listing premiums for liability and physical damage coverages only).