Present:  All the Justices

THOMAS M. STONE

OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 960412                    December 16, 1996

LIBERTY MUTUAL INSURANCE COMPANY

UPON A QUESTION OF LAW CERTIFIED BY THE UNITED STATES
COURT OF APPEALS FOR THE FOURTH CIRCUIT

Acting under the provisions of our Rule 5:42, the United States Court of Appeals for the Fourth Circuit certified to this Court a question of Virginia law, the answer to which is determinative of a proceeding pending before the Fourth Circuit.  We accepted the certification by order entered in June 1996.  The question involves statutory interpretation and a motor vehicle insurance coverage issue arising from an uninsured/underinsured motorist endorsement to an insurance policy.

The record establishes the following facts.  Thomas M. Stone was a part-time employee of Tidewater Pizza, Inc., in Virginia Beach, for which he delivered pizzas.  In making deliveries, Stone was responsible for providing his own transportation and used his own vehicle.

In October 1992, while Stone was lawfully operating his vehicle in the scope of his employment, a collision occurred between his vehicle and one operated by Carol Drye.  Stone sustained serious personal injuries in the collision.

Later, he recovered a judgment against Drye in the Circuit Court of the City of Virginia Beach for $250,000 plus interest and costs.  At the time of the collision, only $25,000 of

liability or other coverage was applicable to Drye's use of her vehicle and available to satisfy Stone's judgment.

In effect at the time of the collision was a "Business Auto" policy of insurance issued by Liberty Mutual Insurance Company to "Tidewater Pizza, Inc.," as the named insured. The coverage afforded under the policy included motor vehicle liability insurance with a limit of $350,000 and, by endorsement, uninsured motorist insurance, which included underinsured motorist coverage, carrying the same limit. For clarity, we shall use the term "uninsured" to include both underinsured and uninsured coverage.

Subsequently, Stone filed in the Virginia Beach circuit court a declaratory judgment action against Liberty Mutual seeking a declaration that the insurer was liable to him for $225,000 under the uninsured motorist coverage. Following removal of the case by the insurer to the United States District Court for the Eastern District of Virginia, the parties stipulated to the facts and submitted the coverage issue to the district court on cross-motions for summary judgment.

The district court sustained Stone's contention that the insurer's policy issued to Tidewater conflicted with Code § 38.2-2206, the uninsured motorist statute. When the provisions of an insurance policy conflict with the requirements of the uninsured motorist statute, the statute controls and the policy provisions are void and ineffective. Bryant v. State Farm Mut. Auto. Ins.

- 2 -

<u>Co.</u>, 205 Va. 897, 900, 140 S.E.2d 817, 819 (1965).  Thus, the district court granted Stone's motion for summary judgment and held he was entitled to uninsured coverage in the sum of $225,000 plus interest and costs.  The district court rejected an alternative theory of coverage offered by Stone.

The insurer appealed the former ruling of the district court and Stone appealed the latter.  The Fourth Circuit agreed with the district court on the latter ruling and has affirmed that portion of the district court's order.  The issue generating the former ruling is the subject of this certification.

According to the policy's uninsured motorist coverage, the insurer agrees to pay, up to the limit of liability, "all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle.  The damages must result from bodily injury sustained by the insured . . . caused by an accident."  Of course, Stone can recover against the insurer only if he qualifies as an "insured" under the uninsured coverage.

The uninsured motorist endorsement provides coverage to two classes of potential insureds.  First, the term "insured" is defined as the named insured (Tidewater) "or any family member" of the named insured.  Second, the term "insured" includes "[a]nyone else occupying a covered auto."  For purposes of the uninsured motorist coverage, the term "covered auto" is defined to include "[o]nly those autos [Tidewater owns] which, because of

the law in the state where they are licensed or principally garaged, are required to have and cannot reject uninsured motorists insurance."  There are two such vehicles listed in the policy, a Ford and a Honda; Stone's vehicle is not listed in the policy.

According to the policy's liability coverage, the insurer agrees to pay, up to the limit of liability, all sums "the insured legally must pay as damages because of bodily injury . . . to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto."  The term "covered auto" for liability purposes is defined to include certain non-owned automobiles, that is, automobiles Tidewater "d[id] not own, lease, hire or borrow which [were] used in connection with [Tidewater's] business."  Stone's automobile was not owned, leased, hired, or borrowed by Tidewater, but it was being used in Tidewater's business.  However, the definition of the term "insured" in the liability portion of the policy does not include Stone.  In fact, according to the order of certification, Stone "stipulated that he is not covered under the liability provisions of the policy, and indeed, the exclusions defining the term `insured' clearly operate to exclude him."

Stone does not dispute that his automobile is not a "covered auto" under the uninsured motorist provisions of the policy; the only automobiles covered under those provisions are those vehicles owned by Tidewater.  Stone argues, however, consistent

- 4 -

with the district court's ruling, that he was operating an automobile to which the Liberty Mutual policy applied because he was operating a "covered auto" under the liability provisions. Thus, he says, the insurer was required under Code § 38.2-2206(A), _infra_, to provide him uninsured motorist coverage since, according to Stone, he was an "insured" under Code § 38.2-2206(B), _infra_. Stone contends that the policy violates subsection (A) because although it specifically insures non-owned automobiles under the liability provisions of the policy, it does not provide uninsured motorist coverage to anyone occupying the same non-owned automobiles.

The insurer recognizes that it must provide uninsured motorist insurance pursuant to subsection (A), but argues it can limit who is an "insured" without violating the provisions of subsection (B) of the statute. Alternatively, the insurer maintains that Stone is not entitled to benefits under the policy because benefits are excluded under the liability provisions of the policy given the fact that Stone was not legally liable for the collision with Drye.

Thus, the following question is framed for us by the Fourth Circuit: "Whether, under these facts, Stone was an insured as defined in subsection 38.2-2206B; that is, does subsection 38.2-2206B mandate that Stone is an insured under the uninsured motorist endorsement of Tidewater's automobile policy notwithstanding the policy's language?"

Elaborating, the Fourth Circuit states that the issue to be decided is whether "Tidewater's policy with Liberty violated subsection 38.2-2206A, as the district court concluded, because Stone is an `insured' under subsection 38.2-2206B."  Continuing, the Fourth Circuit observes that "[i]f Stone is an insured, then he is entitled to receive uninsured benefits under the policy. If the policy does not violate subsection 38.2-2206A and Stone is not, therefore, entitled to receive uninsured motorist benefits under the policy, then the judgment of the district court will be reversed."

Virginia's uninsured motorist statute, recently amended, contained the following pertinent provisions at the time of this controversy.  Code § 38.2-2206 (Repl. Vol. 1994).

Subsection (A) provided that "no policy or contract of bodily injury . . . liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued or delivered in this Commonwealth to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle principally garaged or used in this Commonwealth unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle" within certain monetary limits. Subsection (A) further provided that "[t]hose limits shall equal but not exceed the limits of the liability insurance provided by

- 6 -

the policy. . . ."

Subsection (B) provided that the term "`_Insured_' as used in subsection[] A . . . of this section means the named insured and, while resident of the same household, the spouse of the named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above."

We must consider how far subsection (B) extends to insureds of the second class under the policy, that is, "[a]nyone else occupying a covered auto." This is purely a question of statutory interpretation: Does Stone qualify under the statute as an insured, notwithstanding the limiting language of the policy? We hold that he does not.

An analysis of the statute in question must be made against the following settled background. The Virginia uninsured motorist statute "is meant to protect an insured motorist, his family and permissive users of his vehicle against the peril of injury by an uninsured wrongdoer, not to provide `insurance coverage upon each and every uninsured vehicle to everyone.'" _Bayer_ v. _Travelers Indem. Co._, 221 Va. 5, 8, 267 S.E.2d 91, 93 (1980) (quoting _Nationwide Mut. Ins. Co._ v. _Harleysville Mut. Cas. Co._, 203 Va. 600, 603, 125 S.E.2d 840, 843 (1962)).

Turning to the statute, we construe the plain language of subsection (A) as merely reciting those circumstances under which policies providing bodily injury liability insurance, issued in the Commonwealth upon vehicles principally garaged or used in the State, must contain endorsements agreeing to pay "the insured" certain sums that such insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle.  As the insurer contends, nothing in that subsection purports to require that all the same vehicles and insureds be covered under both liability and uninsured motorist coverages of the same policy.  The subsection does expressly recite that the <u>limits</u> of uninsured motorist coverage shall be equal to but not exceed the limits of liability insurance, but it does not require other similarities of coverage.

The focus in this case must be on subsection (B) of the statute.  Given the facts, the crucial statutory language, which defines the term "insured," describes the extent to which uninsured motorist coverage is mandated by the statute to insureds of the second class.  An insured is "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above."

Dissecting the clauses, we look first to the term "motor vehicle."  The language does not say "a," "any," "every," or

"all."  In two places, it provides "the" motor vehicle to which the policy applies.  Stone was not using either of "the" motor vehicles to which the policy applies, the Ford or the Honda; he was using his own motor vehicle.  Thus, the statute only requires, as to insureds of the second class, that uninsured motorist coverage be provided to those who are in either of the motor vehicles listed in the policy, as opposed to "any" vehicle to which the policy might apply.

Second, and more importantly, we look to the language providing that the person who uses the motor vehicle must do so "with the expressed or implied consent of the named insured." Obviously, when the General Assembly employs this language, it is resorting to language relating to the omnibus clause found in Code § 38.2-2204(A), which deals with liability insurance covering motor vehicles (policy must contain a provision insuring any person using the motor vehicle "with the expressed or implied consent of the named insured").

When construing such language, we repeatedly have held that a named insured generally cannot give permission to use a vehicle that the named insured does not own.  For example, in Nationwide Mut. Ins. Co. v. Cole, 203 Va. 337, 341, 124 S.E.2d 203, 206 (1962), the Court said that "in order for one's use and operation of an automobile to be within the meaning of the omnibus coverage clause requiring permission of the named insured, the latter must, as a general rule, own the insured vehicle or have such an

interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission." Accord Virginia Auto Mut. Ins. Co. v. Brillhart, 187 Va. 336, 343, 46 S.E.2d 377, 380 (1948).

But Stone contends that because he was operating a "covered auto" within the meaning of the liability provisions of the policy, he therefore qualified as an "insured" under the uninsured motorist statute in that he was using a motor vehicle to which the policy applies within the mandate of subsection (B). Stone argues that the employer, Tidewater, impliedly gave Stone permission to operate Stone's vehicle when he was using it in the scope of the employer's business. We reject these contentions.

The "expressed or implied consent" language of the subsection modifies "the motor vehicle to which the policy applies" clause. If the legislature, in the uninsured motorist statute, had meant to include as insureds of the second class occupants of non-owned vehicles, then the General Assembly surely would have used language like it uses at the end of Code § 38.2-2204(A), which deals with the sort of permission needed when one is operating a non-owned vehicle. That statute refers to "permission or consent of the owner" of a non-owned vehicle, and deems permission or consent of "the custodian" to be the permission of the owner. The uninsured motorist statute contains no such expansive language.

Simply put, "the vehicle" referred to in subsection (B)

includes only owned, not non-owned vehicles.  Thus, there is no statutory mandate that requires the courts to ignore the insurer's policy language as written.

Accordingly, the certified question is answered in the negative.

JUSTICE KOONTZ, with whom JUSTICE LACY joins, dissenting.

I respectfully dissent.  The Virginia uninsured motorist statute is remedial in nature and is to be liberally construed so that its intended purpose, to protect the innocent victims of negligent uninsured/underinsured motorists, may be accomplished.  See Lipscombe v. Security Ins. Co., 213 Va. 81, 83, 189 S.E.2d 320, 322-23 (1972); Nationwide Mutual Insurance Co. v. Sours, 205 Va. 602, 606, 139 S.E.2d 51, 54-55 (1964).  We are required to look to the words used in the statute to determine its meaning and to give effect only to the meaning so determined.  See Rose v. Travelers Indemnity Co., 209 Va. 755, 758, 167 S.E.2d 339, 342 (1969).

When the accident in question occurred, Code § 38.2-2206 provided in pertinent part that:

A.  [N]o policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued or delivered in this Commonwealth to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle principally garaged or used in this Commonwealth unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle with limits not less than the requirements of § 46.2-472.  Those limits shall equal but not exceed the limits of

the liability insurance provided by the policy. . . .

B.  "Insured" as used in [subsection] A . . . means the named insured and, while resident of the same household, the spouse of the named insured, and relatives of either, while in a motor vehicle or otherwise, <u>and any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured</u> . . . .

(Emphasis added.)[1]

There is no dispute that the liability provisions of Liberty's policy extended liability coverage to Stone's vehicle.[2] Accordingly, subsection (A) required Liberty's policy to also provide uninsured motorist coverage with limits equal to those of the liability policy, if Stone, as a user of that vehicle at the time of the accident, met one of the definitions of an "insured" contained in subsection (B).

On the facts of this case, the majority correctly identifies the crucial statutory language in subsection (B) defining "insured" to be "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured."

Contrary to the initial conclusion reached by the majority, however, this phrase does not limit "the motor vehicle" to one "listed in the policy."  The express language "to which the

_____

[1]Subsequent amendments to this statute are not pertinent to the issue in this case.

[2]The declarations page of the liability policy specifically identifies non-owned vehicles while being used in Tidewater's business as "COVERED AUTOS."

policy applies" modifies "the motor vehicle." There can only be two interpretations of the phrase "the policy" when subsection (B) is read, as it must be, in context with subsection (A). This phrase can only mean "the uninsured motorist policy" or "the liability policy." The former interpretation must be rejected because it would render the entire statute meaningless. This is so because the mandate of subsection (A) for uninsured motorist coverage for an "insured" would never be invoked by a definition of insured under subsection (B) that is restricted to a user of a motor vehicle that already has uninsured motorist coverage. Rather, it is manifest that the legislature intended this phrase to refer to the liability coverage provision described in subsection (A), so that the phrase means "the motor vehicle to which the liability policy applies."

Finally, the majority suggests that the statute's requirement that use of the vehicle must be "with the expressed or implied consent of the named insured" eliminates non-owned vehicles from subsection B because a named insured cannot give permission to use a vehicle that the named insured does not own. Nothing in the statute suggests that such an interpretation was intended by the legislature to limit the mandate of subsection (A).

To accomplish the mandate that the insurer issue no liability insurance policy upon any motor vehicle principally used in this Commonwealth unless it contains an endorsement or

- 13 -

provisions for uninsured motorist coverage in equal limits, the legislature expressly used the phrase "with the express or implied consent of the named insured" to modify the definition of insured in subsection (B). Thus, the legislature recognized that there are instances, such as the present case, where a "named insured," i.e., the person or entity contracting for liability coverage, would not be the owner of all the vehicles to which the policy applies. Here, Stone was using a vehicle to which Liberty's liability policy applies because he was using it in connection with Tidewater's business, and he was doing so with the consent of Tidewater, the "named insured."

For these reasons, in my view, at the time of the accident in question, Stone was an "insured" as defined by subsection (B) of the statute and, thus, notwithstanding the limiting provisions of the uninsured motorist endorsement of Tidewater's automobile policy with Liberty, Code § 38.2-2206 mandated that Stone be provided coverage as an insured under the uninsured motorist endorsement of that policy. Accordingly, I would answer the certified question in the affirmative.