WYNN, Circuit Judge, dissenting:
 

 Consider the auto insurance policy at issue in this case, which has two relevant components. The first-the Declarations Pages-states that the Liability portion of
 the policy covers "Any 'Auto' " and that the Uninsured/Underinsured Motorist ("UIM") portion covers "Owned 'Autos' Only." J.A. 68, 148. The second-the UIM Endorsement-provides that, for purposes of that Endorsement, a "[c]overed auto" is "a motor vehicle ... with respect to which the 'bodily injury' or 'property damage'
 
 liability coverage
 
 of the policy applies." J.A. 104 (emphasis added). In other words, because the Liability policy covers "Any 'Auto,' " so too must the UIM policy, notwithstanding the fact that the Declaration Pages state UIM coverage applies to "Owned 'Autos' Only." J.A. 68, 148. Even the craftiest of lawyers would find it difficult to claim such documents are not ambiguous. Yet that is precisely what the majority opinion concludes.
 
 Ante
 
 at 628.
 

 The majority opinion asserts that several decisions by the Supreme Court of Virginia dictate that conclusion. But a close reading of those decisions reveals that the Supreme Court of Virginia has not addressed-much less decided-the proper result when, as here, an insurance policy's Declarations Pages conflict with an Endorsement included in the same policy. Absent a controlling decision from the Virginia Supreme Court, this Court should follow settled state law governing the interpretation of ambiguous coverage terms in insurance contracts, which holds that the ambiguous terms should be construed in favor of coverage. Rather than applying this settled Virginia law, the majority opinion engages in complex legal gymnastics, resolving the ambiguity through interpretive principles that lack any basis in Virginia law. Accordingly, I respectfully dissent.
 

 I.
 

 The majority opinion maintains that the Supreme Court of Virginia's decisions in
 
 Bayer v. Travelers Indemnity Co.
 
 ,
 
 221 Va. 5
 
 ,
 
 267 S.E.2d 91
 
 (1980) (per curiam), and
 
 Nationwide Mutual Insurance Co. v. Hill
 
 ,
 
 247 Va. 78
 
 ,
 
 439 S.E.2d 335
 
 (1994), "control" this case.
 
 Ante
 
 at 628. I disagree.
 

 In
 
 Bayer
 
 , the claimant (Bayer) was a passenger in his own uninsured vehicle and was injured when the driver of his car (Whitaker) collided with another uninsured vehicle.
 
 See
 

 267 S.E.2d at 91-92
 
 . Bayer thus sought to recover under Whitaker's UIM policy.
 
 See
 
 id.
 

 As in this case, the UIM Endorsement in
 
 Bayer
 
 stated that UIM coverage applied to vehicles to which the Liability policy applied.
 
 See
 

 id.
 

 at 92
 
 . Significantly, under the policy, Liability coverage extended to non-owned vehicles only
 
 when the insured was at fault
 
 .
 
 See
 

 id.
 

 at 93
 
 . The court concluded that because (1) Bayer's vehicle was a "non-owned" vehicle for purposes of Whitaker's policy, and (2) Whitaker was not at fault, Bayer was not entitled to recover under Whitaker's policy.
 
 See
 
 id.
 

 The majority opinion makes much of the fact that fourteen years later, in
 
 Hill
 
 , the Supreme Court of Virginia re-examined the record in
 
 Bayer
 
 and determined that, as in this case, the Declarations Pages provided that only automobiles owned by the insured were covered under the UIM policy.
 
 Ante
 
 at 629 (quoting
 
 Hill
 
 ,
 
 439 S.E.2d at
 
 337 ). Under the terms of the Declarations Pages, therefore, Bayer would not have been covered under Whitaker's policy, because Whitaker did not own the vehicle.
 
 See
 

 Hill
 
 ,
 
 439 S.E.2d at 337
 
 . According to the majority opinion in this case,
 
 Bayer
 
 , as clarified by
 
 Hill
 
 , establishes that a coverage definition in the Declarations Pages controls, to the extent it conflicts with a definition in an Endorsement.
 
 Ante
 
 at 629. But
 
 Hill
 
 's clarification of
 
 Bayer
 
 's facts does not resolve the ambiguity at issue in this case. Unlike here-in which there is a conflict between the Declarations Pages and the Endorsement as to whether UIM coverage is available-Bayer
 was not entitled to coverage under the plain language of
 
 both
 
 the Declarations Pages and the Endorsement.
 
 See
 

 Hill
 
 ,
 
 439 S.E.2d at 337
 
 . As a result, the Supreme Court of Virginia did not consider, much less decide, the critical question presented by this case: what to do when the language of the Declarations Pages leads to a different result than the language of the Endorsement?
 

 Hill
 
 also failed to address that question. As the majority opinion here notes, the record in
 
 Hill
 
 did not include the Declarations Pages.
 
 Ante
 
 at 629 n.8 (citing
 
 Hill
 
 ,
 
 439 S.E.2d at
 
 338 n.2 ). Faced with this omission,
 
 Hill
 
 treated the UIM policy as if it "did not limit the definition of [a covered] vehicle to one owned by the named insured, as the policy did in
 
 Bayer
 
 ."
 
 439 S.E.2d at 337
 
 . In other words, the court assumed, without having the Declarations Pages available, that they would not have excluded the vehicle at issue from being covered.
 
 See
 
 id.
 

 Then, turning to the language in the Endorsement, the court noted that, as in
 
 Bayer
 
 , the Endorsement stated UIM coverage applied to vehicles covered by the Liability policy.
 
 See
 

 id.
 

 at 337-38
 
 . As in
 
 Bayer
 
 , the Liability policy covered non-owned vehicles
 
 only
 
 if the insured was at fault.
 

 Id.
 

 at 338
 
 . Unlike in
 
 Bayer
 
 , however, the driver from whom coverage was sought was also undisputedly at fault in
 
 Hill
 
 , so the Liability coverage-and by virtue of the definition in the Endorsement, the UIM coverage-applied.
 
 See
 
 id.
 

 Accordingly, like the policy in
 
 Bayer
 
 , the Declarations Pages and Endorsement in the policy at issue in
 
 Hill both led to the same result
 
 -just this time, they both favored coverage.
 
 Hill
 
 , therefore, did not address the question at issue in this case-how a court should resolve a discrepancy in terms of coverage between the Declarations Pages and an Endorsement.
 

 Thus, neither
 
 Bayer
 
 nor
 
 Hill
 
 provides any guidance regarding whether we should follow the definitions in the Declarations Pages or the Endorsement in determining whether coverage is available.
 
 *
 
 Accordingly, we must follow state law canons of construction governing the interpretation of insurance contracts. Here, we have two directives. First, the contract's terms "must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent."
 
 Virginia Farm Bureau Mut. Ins. Co. v. Williams
 
 ,
 
 278 Va. 75
 
 ,
 
 677 S.E.2d 299
 
 , 302 (2009) (Keenan, J.). "When a disputed policy term is unambiguous," a court must apply the "plain meaning as written."
 

 Id.
 

 Second, "if disputed policy language is ambiguous and can be understood to have more than one meaning, we construe the language in favor of coverage and against the insurer."
 

 Id.
 

 ;
 
 accord
 

 Virginia Farm Bureau Mut. Ins. Co. v. Gile
 
 ,
 
 259 Va. 164
 
 ,
 
 524 S.E.2d 642
 
 , 645 (2000). "Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer."
 
 St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.
 
 ,
 
 227 Va. 407
 
 ,
 
 316 S.E.2d 734
 
 , 736 (1984)
 

 As explained above, the terms of the contract here cannot be harmonized. There
 is simply no squaring two provisions, one of which purports to cover "Any Auto" and the other of which purports to cover "Owned Autos Only." The majority claims that the more specific document (i.e. the Declarations Pages) should control, but that assertion finds no support in the language of the policy or Virginia law. As to the language of the policy, the Endorsement begins in boldface, all-caps type that states, "
 
 THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
 
 ." J.A. 104. This language arguably establishes that the Endorsement should control.
 

 As to Virginia law, perhaps the most instructive case from the Virginia Supreme Court is
 
 Seals v. Erie Insurance Exchange
 
 ,
 
 277 Va. 558
 
 ,
 
 674 S.E.2d 860
 
 (2009). In that case, Seals was test-driving a vehicle at a car dealership when he was hit by an underinsured motorist.
 
 See
 

 id.
 

 at 861
 
 . The car dealership's insurance company sought a declaratory judgment stating that Seals was not covered under the dealership's UIM policy.
 
 See
 
 id.
 

 As with the Endorsement here-the UIM Endorsement in
 
 Seals
 
 defined a "covered auto" as "a motor vehicle ... with respect to which the bodily injury ... liability coverage of the policy applies."
 

 Id.
 

 (emphasis omitted). The
 
 Seals
 
 court thus looked to the Liability coverage, which stated "[w]e will pay all sums anyone we protect legally must pay for property damage to autos."
 

 Id.
 

 (emphasis omitted). The term "anyone we protect" included, among other definitions, "[a]nyone else while using an auto we insure with your permission,
 
 except ... your customer who has other available insurance
 
 with limits at least equal to those required by law in the state where the auto is garaged."
 

 Id.
 

 (emphasis added). Seals had other available insurance, so the insurance company claimed he was not entitled to coverage under the dealership's Liability policy and thus also was not entitled to coverage under the UIM policy.
 
 See
 
 id.
 

 The Supreme Court of Virginia disagreed. Although the court found that Seals was not entitled to coverage under the Liability policy because he had his own personal insurance, it nonetheless concluded that Seals was entitled to coverage under the UIM Endorsement because the motor vehicle he was driving was covered under the language of the UIM Endorsement.
 
 See
 

 id.
 

 at 862-64
 
 . In reaching that conclusion, the court said "we
 
 begin
 
 ... with the UM/UIM endorsement."
 

 Id.
 

 at 863
 
 (emphasis added). That provision, like here, defined "anyone we protect" as "anyone else occupying a covered auto."
 

 Id.
 

 A "covered auto," according to the Endorsement, was "
 
 a motor vehicle
 
 ... to which the bodily injury ... liability coverage ... applies."
 

 Id.
 

 (emphasis added). Because the definition from the Endorsement provided that the UIM policy applied to "
 
 a motor vehicle
 
 ... to which the bodily injury ... liability coverage ... applies," then it applied to the vehicle Seals was driving.
 

 Id.
 

 (emphasis added). Thus, since the
 
 vehicle
 
 was covered under the Liability policy, and Seals was not personally excluded from the UIM coverage, he was entitled to recover under the policy.
 
 See
 
 id.
 

 Despite the majority opinion's contention that the Declarations Pages controlled the outcome in
 
 Seals
 
 , the opinion states that the "proper inquiry" in determining whether Seals was entitled to coverage under the UIM policy focused on the language of the UIM Endorsement.
 

 Id.
 

 The reason the court then looked to the Declarations Pages was
 
 because
 
 the Endorsement explicitly cross-referenced them, as is the case here.
 
 See
 
 id.
 

 Accordingly, under
 
 Seals
 
 , the "proper inquiry" is to
 
 first
 
 look at the coverage provision in the UIM Endorsement, and then look to the Declarations
 Pages definition cross-referenced by the Endorsement.
 

 Id.
 

 Even if
 
 Seals
 
 does not control this case due to the conflict between the coverage provisions in the Endorsement and the Declarations Pages, the Plaintiffs would nonetheless be entitled to coverage because Virginia law dictates that ambiguous provisions in insurance contracts be construed in favor of coverage.
 
 See
 

 Williams
 
 ,
 
 677 S.E.2d at 302
 
 . The majority opinion maintains that this principle should not apply here because the language of the Endorsement was drawn verbatim from a form created by the Virginia State Corporation Commission ("SCC"), which requires the Endorsement be used for every motor vehicle policy issued in Virginia.
 

 Virginia law does not support the majority opinion's contention that the SCC form abrogated the well-established rule that ambiguous provisions in insurance contracts must be construed in favor of coverage. Tellingly, neither the majority opinion nor the Defendant cites a single Virginia case-nor have I found any-declining to apply this canon. The majority opinion is correct that in
 
 Appalachian Regional Healthcare v. Cunningham
 
 ,
 
 294 Va. 363
 
 ,
 
 806 S.E.2d 380
 
 (Va. 2017), the Supreme Court of Virginia stated that the canon "exists
 
 in part
 
 because '[i]nsurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders.' "
 

 Id.
 

 at 386 n.10 (quoting
 
 Gov'tEmps. Ins. Co. v. Moore
 
 ,
 
 266 Va. 155
 
 ,
 
 580 S.E.2d 823
 
 , 828 (Va. 2003) ) (emphasis added). But in
 
 Cunningham
 
 , the Supreme Court of Virginia expressly declined to address application of the canon because it found the contract at issue was not ambiguous.
 
 See
 

 806 S.E.2d at
 
 386 n.10. Thus, the quoted language is dicta, and, more importantly, provides no support for the contention that the canon is inapplicable when the state drafts an Endorsement. Indeed, given that an insurer's status as the drafter of the contract is only a "part" of the rationale behind the canon,
 
 Cunningham
 
 implies that other reasons would still favor applying the canon, even when the insurer is not the drafter.
 

 Id.
 

 That would seem to be particularly true when, as here, a state regulator has rendered a judgment as to what language should be included in an insurance contract.
 

 The majority opinion concludes by arguing that my reasoning leads to "absurdity" by espousing "a public policy choice made at no place in Virginia law"-that an automobile insurance policy "extend[s] UIM coverage to every vehicle to which it extended liability coverage."
 
 Ante
 
 at 632. Not so. There is no dispute that the language of the SCC's required UIM Endorsement defines "[c]overed auto" as "a motor vehicle ... with respect to which the 'bodily injury' or 'property damage'
 
 liability coverage
 
 of the policy applies." J.A. 104 (emphasis added). And the SCC's requirement that insurance contracts include this form language is amenable to at least two interpretations, neither of which support the majority opinion's assertion that my position leads to "absurdity."
 

 On the one hand, the Endorsement's required language could be treated as the reasoned judgment of a state regulator creating a new standard of UIM coverage, above the minimum required by statute. To be sure, the Supreme Court of Virginia has held that the
 
 statute
 
 does not require UIM coverage for non-owned vehicles.
 
 See
 

 Stone
 
 ,
 
 478 S.E.2d at 886
 
 . But that does not necessarily mean that the SCC, as a state administrative body, cannot-and did not-use the form to create a regulatory requirement above the floor created by the statute. If that is indeed the case, the Endorsement would not lead to "absurdity," but would instead represent a "public policy choice" made by the Commonwealth
 of Virginia, rather than one created by this Court.
 
 Ante
 
 at 632.
 

 On the other hand, one could view the Endorsement's definition of "[c]overed auto" as providing a default definition from which the parties can agree to deviate through negotiated contractual provisions. To do so, however, the contract would need to include language clearly establishing that the parties intended to limit UIM coverage-language which the policy at issue here lacks and which would prevent the "absurdity" feared by the majority.
 

 Id.
 

 For example, the parties could include language in the Declarations Pages stating that, "notwithstanding the language of the Uninsured/Underinsured Motorist Endorsement, the definition of 'covered vehicles' indicated in these Declarations controls." Yet, the policy at issue here makes no mention of the conflicting language in the Declarations Pages and the Endorsement, nor does it expressly provide that the coverage language in the Declarations Pages controls. Considering that the Endorsement, by its own terms, "
 
 CHANGES THE POLICY
 
 ," J.A. 104, the insurance company's acquiesce to this conflict is as much evidence that the Endorsement controls as it is to the contrary. In other words, we are left without clear evidence as to how the parties in this case wanted that conflict resolved. We should therefore construe this ambiguous aspect of the contract in favor of coverage.
 
 See
 

 Williams
 
 ,
 
 677 S.E.2d at 302
 
 .
 

 Deciding between these two possibilities is a complex question of state law not raised by the parties in this case. As such, we are left with another level of ambiguity-not just the internal ambiguity between the documents themselves but also the ambiguity created by the competing positions of different branches of the Virginia government. The majority writes its opinion under the guise of federalism, but the majority is merely choosing to rely on language in an opinion of the Supreme Court of Virginia over language in a form promulgated by a state regulator-form language that does not even necessarily conflict with the state court opinion. That decision no doubt advances the majority opinion's policy objective. But "[a]s a court sitting in diversity, we are bound to apply state law, not create it."
 
 Ante
 
 at 632. We should therefore not be establishing state policy, particularly when doing so potentially requires choosing between the policy preferences of two different branches of state government. Rather, we should follow undisputed state law regarding the proper approach to interpreting Virginia insurance contracts: construe ambiguous provisions in favor of coverage.
 
 See
 

 Williams
 
 ,
 
 677 S.E.2d at 302
 
 .
 

 This Court should recognize the multi-layered ambiguity presented by the documents in this case and apply that canon of construction. The Plaintiffs should thus be entitled to coverage under the policy, and the district court should be reversed. Nothing presented by this case justifies the majority's efforts to create an unprecedented exception to a well-established principle of state law. For these reasons, I respectfully dissent.
 

 The majority opinion also relies on
 
 Stone v. Liberty Mutual Insurance Co.
 
 ,
 
 253 Va. 12
 
 ,
 
 478 S.E.2d 883
 
 (1996). In
 
 Stone
 
 , the Supreme Court of Virginia decided a question not at issue in this case-what level of uninsured motorist insurance is
 
 required
 
 by Virginia statute.
 
 Stone
 
 held that under the relevant statute, coverage is required only for owned vehicles.
 
 See
 

 id.
 

 at 886
 
 . But
 
 Stone
 
 sets a floor for UIM coverage, not a ceiling. It in no way bars an insurer from contracting to provide UIM coverage for non-owned vehicles, or an insured from contracting with an insurer to obtain such coverage. The relevant question here is whether the Defendant entered into such a contract.