**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-1129**

_____

ERIE INSURANCE PROPERTY & CASUALTY COMPANY,

Plaintiff - Appellant,

v.

JAMES SKYLAR COOPER,

Defendant - Appellee,

------------------------------

WEST VIRGINIA INSURANCE FEDERATION,

Amicus Supporting Appellant.

_____

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Irene C. Berger, District Judge.  (2:20−cv−00321)

_____

Argued:  September 19, 2023                    Decided:  June 24, 2025

_____

Before HARRIS and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

_____

Vacated and remanded with instructions by published per curiam opinion.

_____

**ARGUED:**  Matthew James Perry, BURNS WHITE LLC, Huntington, West Virginia, for Appellant.  Jill Rice, DINSMORE & SHOHL LLP, Morgantown, West Virginia, for

Amicus Curiae.  R. Chad Duffield, FARMER, CLINE & CAMPBELL, PLLC, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  J. Jarrod Jordan, Jill E. Lansden, LAMP BARTRAM LEVY TRAUTWEIN PERRY & POWELL, PLLC, Huntington, West Virginia, for Appellant.  Jennifer D. Roush, FARMER, CLINE & CAMPBELL, PLLC, Charleston, West Virginia, for Appellee.  David R. Stone, DINSMORE & SHOHL LLP, Morgantown, West Virginia, for Amicus Curiae.

---

PER CURIAM:

In this appeal involving an insurance dispute, we certified a question of law to the West Virginia Supreme Court of Appeals (the West Virginia court), which now has answered our question. Applying the law as stated by that court and as explained below, we conclude that James Cooper is not an "insured" for purposes of West Virginia Code § 33-6-31 and therefore is ineligible to receive underinsured motorist benefits under the automobile insurance policy issued to Pison Management, LLC (Pison) by Erie Insurance Property & Casualty Company (Erie). We therefore vacate the judgment of the district court and remand with instructions to enter judgment in favor of Erie.

I.

In August 2019, James Cooper was injured in a car accident while riding as a passenger in a car owned by Rick Huffman. When the accident occurred, Cooper and Huffman, both employees of Pison, were driving to a jobsite while working for Pison. Because Cooper's injuries and resulting damages exceeded the third-party driver's insurance limits, Cooper sought underinsured motorist (UIM) coverage under Pison's commercial automobile policy (the policy) issued by Erie.

The policy provided $1 million in liability coverage for bodily injury and property damage for two particular vehicles owned by Pison (owned vehicles), as well as a class of "non-owned" vehicles associated with 1-to-25 employees. The policy also provided $1 million in UIM coverage only for the owned vehicles. Erie did not provide Pison with an option to purchase UIM coverage for the class of non-owned vehicles.

3

The policy described "non-owned" vehicles as "Employer's Non-Ownership Liability," and included vehicles owned by Pison's employees while being used in Pison's business. The parties agree that Huffman's car qualified under the policy as falling within the class of non-owned vehicles.

Based on the policy's terms, Erie denied Cooper's claim for UIM coverage and filed suit in federal district court seeking a declaration that the policy did not provide the UIM coverage sought by Cooper. Cooper filed an answer and counterclaims seeking, in relevant part, a declaratory judgment that Erie violated West Virginia Code § 33-6-31. According to Cooper, that statute required Erie to provide Pison with the opportunity to elect UIM coverage for the class of non-owned vehicles. Cooper asserted that because Erie failed to make such an offer, UIM coverage existed by operation of law to cover Cooper as a passenger in Huffman's car. W. Va. Code § 33-6-31(b); *see also Thomas v. McDermitt*, 751 S.E.2d 264, 265 (W. Va. 2013) (explaining that when an insurer is "required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured").

The parties filed cross-motions for summary judgment, and the district court awarded judgment in favor of Cooper. The court held that the statute requires that an insurer make a commercially reasonable offer of UIM coverage "to *all* vehicles covered by [a liability] policy," including the class of non-owned vehicles. Accordingly, the court issued a declaratory judgment that Cooper was entitled to receive UIM coverage equivalent to the liability coverage limit, $1 million. Erie filed a timely appeal in this Court.

4

Because we did not find any West Virginia authority that definitively answered the issue presented, we certified the following question to the West Virginia court:

> Does West Virginia Code § 33-6-31 require an insurer, who issues a commercial automobile insurance policy to a named insured providing liability coverage for particular owned vehicles and a class of non-owned vehicles, to offer underinsured motorist coverage for the class of non-owned vehicles?

As explained in greater detail below, the West Virginia court answered, "no." *Erie Ins. Prop. & Cas. Co. v. Cooper*, 2025 WL 1232887 (W. Va. 2025). With the benefit of this decision by the West Virginia court, we turn to apply its analysis to the present appeal.

## II.

## A.

We review the district court's decision granting summary judgment de novo. *Berkenfeld v. Lenet*, 921 F.3d 148, 153 (4th Cir. 2019). A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## B.

Subsection (a) of West Virginia Code § 33-6-31 addresses required liability coverage and states, in relevant part, that automobile insurance policies "covering liability arising from the . . . use of any motor vehicle[,] . . . issued . . . in this state to the owner" of the motor vehicle, or issued "upon any motor vehicle" titled in West Virginia, must "contain[] a provision insuring the named insured and any other person . . . using the motor vehicle with the consent . . . of the named insured." W. Va. Code § 33-6-31(a).

5

Regarding UIM coverage, subsection (b) of Section 33-6-31 states that any insurer offering a liability policy as defined in subsection (a):

> shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he or she is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than [the liability coverage provided in the policy.]

*Id.* § 33-6-31(b).  In other words, when an insurer issues a liability policy as defined in subsection (a), subsection (b) requires that an insurer make an offer of UIM coverage "to the insured" at least equivalent to the amount of the liability coverage.  *Id.*

Subsection (c) of the same statute defines "insured," as used in the statute, to include:

> the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person . . . who uses, with the consent, expressed or implied, of the named insured, *the motor vehicle to which the policy applies.*

*Id.* § 33-6-31(c) (emphasis added).  The West Virginia court has explained that this definition of "insured" provides for two classes of insureds: (1) the named insured, and the named insured's spouse and resident relatives, who enjoy broad UIM protection because their coverage is not limited to the use of a particular vehicle, and (2) any person authorized by the named insured to use "the motor vehicle to which the policy applies" (Class II insured).  *See Progressive Max Ins. Co. v. Brehm*, 873 S.E.2d 859, 864 (W. Va. 2022) (citing *Starr v. State Farm Fire & Cas. Co.*, 423 S.E.2d 922, 927 (W. Va. 1992)).

6

In the present case, Cooper contends that he qualifies as an "insured" entitled to UIM coverage under Section 33-6-31.[*]  According to Cooper, he is a "Class II insured entitled to UIM coverage because he was injured by an underinsured motorist while he was using, with Pison's consent, a non-owned vehicle to which the liability policy applies." *Erie*, 2025 WL 1232887, at \*8.  The West Virginia court disagreed with Cooper's position. *Id.*

The West Virginia court first explained that the purpose of UIM coverage under West Virginia law is to "'enable *the insured to protect himself*'" against losses arising from underinsured third parties.  *Id.* at \*7 (citing *Brehm*, 873 S.E.2d at 865 (quoting *Deel v. Sweeney*, 383 S.E.2d 92, 95 (W. Va. 1989))).  The court further explained that West Virginia Code § 33-6-31(b) "contemplates recovery . . . *from one's own insurer*."  *Id.* (quoting *Alexander v. State Auto Mut. Ins. Co.*, 415 S.E.2d 618, 625 (W. Va. 1992) (explaining that UIM coverage "is intended to benefit the person who bought the policy")).  Thus, the "'first step'" in determining entitlement to coverage is whether the person seeking coverage is an "'insured person.'"  *Id.* at \*9 (quoting *Brehm*, 873 S.E.2d at 862).

To determine whether Cooper qualifies as a Class II insured, the West Virginia court analyzed the language of West Virginia Code § 33-6-31(c), specifically, whether "the motor vehicle to which the policy applies" refers only to the motor vehicles owned by the named insured or, as Cooper contends, to all motor vehicles, both owned and non-owned,

---

[*] We rejected Cooper's alternative argument that the policy language was ambiguous regarding whether UIM coverage extended to non-owned autos. *Erie Ins. Prop. & Cas. Co. v. Cooper*, 2023 WL 8439753, at \*1-2 nn.2-3 (4th Cir. 2023) (unpublished).

7

covered under the policy for liability purposes. *Id.* at *8. The West Virginia court explained that, critically, the language "the motor vehicle to which the policy applies" appears after the modifying language: "uses" "with the consent, expressed or implied, of the named insured." *Id.* (quoting W. Va. Code § 33-6-31(c)).

According to the West Virginia court, in order for a person to use a motor vehicle with the "consent expressed or implied, of the named insured," the named insured must either own the vehicle, or otherwise have an interest in the possession and control of the vehicle that allows the insured to give permission to another to use the vehicle. *Id.* (citing *Keystone Ins. Co. v. Fidelity & Cas. Co. of N.Y.*, 260 A.2d 275, 277-78 (Md. 1970)). As the West Virginia court observed, Pison, the named insured, did not own the vehicle in which Cooper was riding; that vehicle was owned by Hamilton. *Id.* Hamilton's vehicle was covered by the policy as a "non-owned vehicle" for liability purposes, because it was being used for Pison's business. But that fact did not provide Pison any right of possession and control of Hamilton's vehicle and, thus, did not permit Pison to "consent" to Cooper's use of, or occupancy in, that vehicle for purposes of Section 33-6-31(c). *Id*.

Instead, the West Virginia court concluded that Pison could only provide its consent for use of the two vehicles owned by Pison and designated as "owned vehicles" in the policy. *Id.* Because Cooper was not a passenger in one of those two vehicles, the West Virginia court concluded that Cooper did not qualify as a Class II insured for purposes of UIM coverage and Erie was not required to offer such coverage to Pison under West Virginia Code § 33-6-31. *Id.*

8

In reaching this conclusion, the West Virginia court found persuasive a decision by the Supreme Court of Virginia (the Virginia court), in which the Virginia court analyzed similar statutory language found in Virginia insurance law, *Stone v. Liberty Mutual Insurance Co.*, 478 S.E.2d 883 (Va. 1996). *Erie*, 2025 WL 1232887, at *7-8. In that case, the Virginia court considered Virginia Code § 38.2-2206B, which contains language similar to West Virginia Code § 33-6-31(c) and defines a Class II insured as one who "uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured." *Stone*, 478 S.E.2d at 885-86.

In *Stone*, the party seeking UIM coverage was a pizza delivery driver who used his own vehicle when making deliveries. *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 190 (4th Cir. 1997) (applying the Virginia court's answer to a certified question). While working in the scope of his employment, the driver was injured in an accident caused by a third party who lacked sufficient insurance coverage. *Id.* The delivery driver sought UIM coverage under his employer's commercial business automobile policy, which named the pizza company as the insured and only covered for UIM purposes two of the company's owned vehicles. *Id.* at 191-92. But, as in the present case, the delivery driver's vehicle was covered under the policy for purposes of liability protection. *Id.* at 191.

The Virginia court concluded that the delivery driver was not using his vehicle "with the expressed or implied consent of the named insured," as required by Virginia Code § 38.2-2206B, because the pizza company did not own the delivery driver's vehicle or otherwise have controlling authority over the driver's use of that vehicle. *Stone*, 478 S.E.2d at 886 (citing *Nationwide Mut. Ins. Co. v. Cole*, 124 S.E.2d 203, 206 (Va. 1962)). The

9

Virginia court further observed that, like the West Virginia statute here, the Virginia statute defining Class II insureds referred to permitted use of "*the* motor vehicle to which the policy applies" rather than "'a,' 'any,' 'every,' or 'all'" motor vehicles to which the policy applies. *Id*. (emphasis added). The Virginia court observed that the delivery driver was not using either of "the" owned vehicles covered by the policy but was using his personally owned vehicle. *Id.* Thus, the Virginia court held that the delivery driver was not entitled to UIM coverage under his employer's policy. *See Stone*, 105 F.3d at 192 (summarizing the Virginia court's conclusion in the certified answer).

Here, the West Virginia court found the *Stone* rationale persuasive and similarly concluded that a passenger in a non-owned vehicle was not entitled to UIM coverage under his employer's policy. *Erie*, 2025 WL 1232887, at *9. We now apply the West Virginia court's conclusion that West Virginia Code § 33-6-31 did not require Erie, which issued a policy with liability protection for both owned and non-owned vehicles, to offer UIM coverage for the non-owned vehicles. And so, the policy at issue in the present case, which excluded UIM coverage for the class of non-owned vehicles, was not subject to reformation as a matter of law. *See* W. Va. Code § 33-6-17 (providing that when an otherwise valid insurance policy "contains any condition or provision not in compliance with the requirements of" Chapter 33, it will be construed to contain the coverage required by West Virginia law); *see also Gibson v. Northfield Ins. Co.*, 631 S.E.2d 598 (W. Va. 2005).

10

III.

Because the West Virginia court concluded that Cooper was not an insured under the policy that Erie issued to Pison, we vacate the district court's judgment in favor of Cooper and remand the case with instructions to enter final judgment in favor of Erie.

*VACATED AND REMANDED*
*WITH INSTRUCTIONS*