**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1496**

WEST NECK COMMUNITY ASSOCIATION, INC.,

Plaintiff - Appellee,

v.

JBWK, LLC,

Defendant - Appellant.

**No. 25-1562**

WEST NECK COMMUNITY ASSOCIATION, INC.,

Plaintiff - Appellant,

v.

JBWK, LLC,

Defendant - Appellee.

Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk.  Elizabeth W. Hanes, District Judge.  (2:22-cv-00491-EWH-LRL)

Argued: December 10, 2025                    Decided:  February 24, 2026

Before NIEMEYER, THACKER, and BERNER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** John D. McIntyre, MCINTYRE STEIN, PLLC, Norfolk, Virginia, for Appellant/Cross-Appellee. Mark R. Baumgartner, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Jeffrey A. Hunn, Scott B. Ingram, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellee/Cross-Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case involves a dispute about the meaning of the Declaration of Covenants, Conditions, and Restrictions (the "Declaration") for a Virginia Beach residential golfing community. After attempting to resolve some of the issues through mediation, the parties chose to litigate.

The district court entered summary judgment and granted partial wins to both sides. It held that the developer could not operate a commercial tree farm on the community's golf course and that the golfing community's community association may enforce the Declaration's rules against the developer. But the district court also held that the community association could not unilaterally amend the Declaration and that it had waived its own claims by failing to exhaust its contractual remedies. Neither party was satisfied. So, this cross-appeal followed.

For the reasons set out below, we affirm.

I.

A.
The Declaration

West Neck is a 300 acre golf development in Virginia Beach, Virginia, reserved for residents aged 55 and older. The Baymark Construction Corporation ("Baymark") built West Neck in 2002 subject to an agreement with a group of landowner-investors. Baymark and the landowner-investors agreed that Baymark would execute and record a deed of covenants to govern the development and preserve its character as a golf community for older individuals. What resulted was the 102 page Declaration that is the subject of this

3

appeal. The Declaration recognizes three types of entities within the development: the Declarant, the Association, and the Owners.

The Declarant is entitled to certain unilateral rights in West Neck governance and land use. Most relevantly, the Declarant has the right to veto proposed amendments to the Declaration. It also has the power to assign its rights and designate a successor Declarant. But before the designation may take effect, the Declarant must do so in a recorded instrument, and the successor must separately "take title to [a] portion of [West Neck] for the purpose of development and/or sale." J.A. 59.[1] Baymark served as the initial Declarant.

The West Neck Community Association ("the Association") is an organization governed by a Board of Directors and consists of all West Neck "Owners." It too has special powers. The Declaration describes the Association as "[a]n integral part of the development plan," and specifically tasks it with "administer[ing] and enforc[ing the] Declaration and the other Governing Documents." J.A. 55. To carry out that mandate, the Declaration grants the Association the power to impose "reasonable monetary fines," suspend Owners' voting rights, and "bring[] suit at law or in equity to enjoin any violation." *Id.* at 84–85. Before imposing fines or other sanctions, however, the Association must give the offending party "notice and a hearing" on the alleged violations. *Id.* at 84.

An "Owner" is any person or business organization that owns a "Unit" in West Neck. Property in West Neck includes: (1) Units, which are parcels intended for single-

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

family occupancy; (2) Common Areas, which include any lands the Association owns, and which must be used "for the common use and enjoyment of the Owners"; and (3) "Private Amenities," which include any lands "owned and operated by [entities] other than the Association for recreational and related purposes . . . and shall include, without limitation, the golf course." J.A. 58–61.

The Declaration has many rules, only a few of which are relevant to this appeal. The Declaration states clearly and repeatedly that all land and entities within West Neck are subject to all the Declaration's rules. It also states unambiguously that land within West Neck "shall be used only for residential, recreational, and related purposes" and not for "[a]ny business, trade . . . or similar activity." J.A. 125, 127. Those rules are binding on the Declarant, the Association, and anyone who owns property within West Neck. Additionally, the Declaration sets out its own dispute resolution procedures. Per this procedure, an interested party -- including the Association -- may only litigate a claim arising from the Declaration if it has attempted in good faith to negotiate and mediate that claim for at least 60 days before filing suit.

## B.
## The Dispute

Baymark served as the Declarant for nearly two decades. In that time, it developed and sold hundreds of homes surrounding the centerpiece golf course at West Neck. But Baymark went bankrupt in September 2019, and closed the golf course. Then, in April 2020, Baymark sold the golf course to WC Capital LLC ("WCC") at a foreclosure sale. Notably, that sale did not include an assignment of Baymark's Declarant rights. The

5

owners of WCC have variously claimed that they intended to sell the golf course or to redesign it and add new residential components.  Indeed, WCC initially planned to sell the land to the Association -- which it considered the most logical buyer.  But when those plans fell through, WCC leased the golf course to JBWK, LLC ("JBWK") so that it could temporarily defray the costs of its purchase of West Neck.  JBWK is a New Mexico corporation with the same owners as WCC.  JBWK describes itself as "an agri-business specializing in the production and sale of sports-turf sod, ornamental trees & shrubs, clumping bamboo, hemp, and similar agri-products."  J.A. 567.

JBWK began feuding with West Neck residents almost immediately.  JBWK claims that it initially allowed the residents to "utilize the [golf course] for walking, biking, and other recreational activities."  Appellant's Br. at 5.  But, JBWK claims, in an attempt to pressure WCC into selling the property, the residents began lobbying the city to impose "impossible" landscaping requirements.[2]  Appellant's Br. at 5.  JBWK also claims that there were numerous incidents of "vandalism" on the golf course, though the only specific instance it mentions is one in which a resident appears to have installed a bird feeder near one of the greens.  J.A. 404; Aff. of Chris Coleman at 4, Dkt. No. 13-2, Case No. 2:22-cv-00491-EWH-LRL, (Jan. 10, 2023, E.D. Va.).  For its part, the Association claims that

---

[2] The city required WCC to keep all the grass on the golf course trimmed, rather than only mowing places with high visibility.  JBWK argues that it would have been "impossible" to do so because (1) WCC lacked appropriate landscaping equipment; (2) "COVID restrictions" would have prevented the work; and (3) the landscaper WCC employed charged $0.02 per square foot, and consequently, mowing the entire 0.2 square mile golf course would cost approximately $120,000.  J.A. 793–94; Appellant's Br. at 5.

JBWK stopped maintaining the golf course, and that "weeds began to take over." Appellee's Br. at 5.

Ultimately, the city sued WCC for municipal landscaping code violations related to the length of the grass on the golf course. The city and WCC settled that case in April 2022. Thereafter, JBWK revoked West Neck residents' walking privileges and put up a "spite fence" around one portion of the golf course. Appellee's Br. at 17.

In September 2021, WCC and the Association entered mediation concerning the length of the grass in some areas of the golf course. Around the same time, JBWK landed a deal with a local landscaping company to grow 700 decorative trees on the golf course. It planted the first of its crop in December 2021. Through counsel, in a letter to WCC dated December 29, 2021, the Association complained that planting the trees constituted "a fail[ure] to maintain [the] property in compliance with the Declaration" and that the grass, although short enough to comply with the city's requirements, was still too long by community standards. J.A. 470. The letter threatened enforcement action if JBWK failed to bring the golf course into compliance by January 6, 2022.

JBWK made no changes to its use or maintenance of the golf course. Therefore, on February 14, 2022, the Association filed a warrant in debt[3] against WCC for $900 in state court for alleged "violation[s] of [the] governing documents of [the] association." J.A. 475. The warrant in debt does not explain the nature of those alleged violations. The

---

[3] A warrant in debt is a standardized form used for submitting civil actions for money damages in Virginia small claims courts. *See* Va. Stat. § 16.1-79; Va. R. Dist. Ct. FMS Form DC-412.

7

Association later non-suited that case in recognition of the fact that it had not abided by the dispute resolution provisions contained in the Declaration.  Briefly, those rules required the Association to attempt informal resolution in good faith for 60 days from the time it provided notice of the alleged governing document violations before filing a formal lawsuit for the same alleged violations.

Then, on March 1, 2022, the Association's lawyer sent another letter to JBWK accusing JBWK of violating the Declaration's landscaping rules.  The letter announced that a "due process hearing" regarding the matter would be held on March 16, 2022.  Appellee's Br. at 7.  JBWK attended the hearing and presented a case, but the Association concluded that JBWK was "failing to maintain its Golf Course Parcels."  J.A. 14.  Yet, nothing appears to have come of this hearing.

While those disputes were taking place, JBWK was also seeking to become the Declarant.  In November 2021, Baymark recorded an assignment assigning its Declarant rights pursuant to the Declaration to JBWK and naming JBWK as successor Declarant.  But there were two issues with this assignment: (1) the State of Virginia had administratively dissolved Baymark a year earlier after it filed for bankruptcy, and (2) the assignment mislabeled JBWK as a Virigina LLC, when in fact it is a New Mexico LLC.  Baymark ultimately executed and recorded a corrected assignment in June 2022 clarifying that JBWK is incorporated in New Mexico.  But Baymark still had not worked out the problem of its legal nonexistence.

JBWK merged with WCC in July 2022.  In doing so, JBWK took ownership over all of the assets of WCC, including the golf course, which it had previously only leased

8

from WCC. Shortly thereafter, JBWK notified the Association that it intended to plant between 7,000 and 10,000 more trees on the golf course and inquired whether the Association remained of the view that doing so would violate the Declaration.

The Association responded by unilaterally adding two amendments to the Declaration in August 2022. The amendments proclaim that because Baymark had been dissolved before Baymark could name a successor Declarant, there simply was no Declarant, and, therefore, that the Association could amend the Declaration at will. With that asserted power, the Association then purported through the amendments to strip all of the Declarant's rights and powers and clarify that JBWK is not the Declarant, but rather, is an Owner subject to the Association's enforcement power.

Importantly, in August 2022, Virginia reinstated Baymark's articles of incorporation, thereby reversing its earlier dissolution of the company. And under Virginia corporate rules, reinstatement voids an earlier dissolution "as if the termination had never occurred." Va. Code Ann. § 13.1-754(C). Thus, the reinstatement retroactively validated Baymark's June 2022 assignment of Declarant rights to JBWK. At that time, JBWK presumed that it had satisfied both requirements set out in the Declaration in order to become the Declarant. Accordingly, JBWK proceeded as though it were the Declarant.

Pursuant to the Declaration's mediation requirement, in September 2022, JBWK requested mediation on "the bigger picture of what should be done with the property." J.A. 530–31, 962. But JBWK offered to waive the Declaration's mediation requirement and proceed to litigation on the distinct question of whether the Declaration permitted JBWK to operate a commercial nursery on the golf course on the condition that the Association

9

waive mediation first. Initially, JBWK and the Association agreed to begin mediation in October. Instead, on September 28, 2022, the Association filed a second warrant in debt in state court and instituted this case. On October 14, 2022, the Association's counsel sent an email to JBWK's counsel stating, "[m]y understanding is that the parties have agreed to waive the mediation at this time." J.A. 537.

## C.
### Procedural History

The Association's second warrant in debt alleged that in violation of the Declaration, JBWK (1) "failed to perform required landscaping"; (2) "erect[ed] the Spite Fence" without permission; and (3) "established . . . a business and trade and otherwise planted plants . . . on the Golf Course Parcels." J.A. 13. The Association requested injunctive relief, statutory fees, costs, and attorneys' fees.

For its part, JBWK filed its own lawsuit in the Eastern District of Virginia in November 2022 seeking the following declaratory judgments: (1) JBWK is the Declarant; (2) the Association's amendments are invalid; (3) JBWK is restricted only by federal, state, and local laws and ordinances in its use of its property; and (4) JBWK is not subject to the Association's enforcement power. JBWK then removed the Association's state lawsuit to federal court, denied each of the Association's allegations, and raised the affirmative defense that the Association had waived its claims by failing to mediate. The district court consolidated the cases pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, which allows for consolidation "[i]f actions before the court involve a common question of law or fact."

The parties filed competing motions for summary judgment on the questions of exhaustion of the Declaration's mediation procedures and ownership of the golf course. In March 2024, the court granted JBWK's motion in part by finding that it was excused from complying with the Declaration's mediation procedures. The court reasoned that JBWK had initially requested mediation and filed its lawsuit only after the Association filed its lawsuit in state court. Further, the court reasoned that JBWK had not raised "claims" within the meaning of the Declaration's exhaustion requirement, but only "counterclaims" responsive to the Association's lawsuit. The court then ordered the parties to renew their motions following further discovery, which they did.

On March 31, 2025, the district court issued a memorandum opinion and order relative to the competing summary judgment motions. First, it held that there was no genuine dispute that JBWK became the Declarant by July 21, 2022, when it merged with WCC and took over its assets. As a result, the court further held that the Association's August 2022 amendments to the Declaration were invalid because it did not obtain the consent of JBWK. Next, the court held that pursuant to the Declaration, West Neck property may only be used for non-commercial purposes, and JBWK's commercial tree farm violated that restriction. Finally, the court held that although the Association had the right to enforce the Declaration against JBWK, it had failed to abide by the Declaration's dispute resolution procedures and, therefore, was not entitled to recover.

Both parties appealed. Each side claims that the district court's holdings in their favor were correct, but that it erred on the rulings adverse to them.

11

II.

We review de novo a district court's grant of summary judgment on a breach of contract claim. *Edwards v. CSX Transp. Co.*, 150 F.4th 232, 235–36 (4th Cir. 2025). A party is entitled to summary judgment only if, viewing the facts in the light most favorable to the non-movant, the movant is entitled to judgment as a matter of law. *Id.* When the parties have filed cross-motions for summary judgment, we ordinarily consider each claim separately by resolving factual disputes and inferences in favor of the party opposing that motion. *deWet v. Rollyson*, 157 F.4th 344, 348–49 (4th Cir. 2025). But, as here, when the parties do not contest the material facts, we consider each claim in tandem. *Id.*

III.

Virginia law treats restrictive covenants as contracts. *Manchester Oaks Homeowners' Ass'n v. Batt*, 732 S.E.2d 690, 697 (Va. 2012). This dispute is governed by Virginia contract law. In Virginia, contract terms are given their ordinary meaning, taken in the context of the whole contract. *Id.*; *Plunkett v. Plunkett*, 624 S.E.2d 39, 42 (Va. 2006). When two provisions appear to conflict, they should be harmonized in order to effectuate the parties' apparent intent. *Plunkett*, 624 S.E.2d at 42.

A.
Exhaustion

Before proceeding to the merits of the parties' claims, we must address the issue of exhaustion. The Declaration states that any party wishing to litigate its terms must first complete the mediation procedures set out in Section 16.2. That section first requires written notice of the nature of the claim and the claimant's proposed resolution. Then, if

12

the parties have not resolved the claim through negotiation within 30 days, the claimant must attempt to submit the claim to mediation. The claimant can only proceed to litigation if the parties still have not settled after 60 days. Any unexhausted claim is waived.

The Association sent WCC -- now JBWK -- notice of its first complaint on December 29, 2021, claiming that JBWK violated the Declaration's landscaping requirements by planting "approximately 800 new trees" on the golf course. J.A. 960. It followed that email with an enforcement letter, also dated December 29, 2021. On February 14, 2022, the Association filed its first warrant in debt. There is no dispute that the Association did not attempt to mediate the dispute before suing. Thus, the Association did not exhaust this claim.

Then, on September 1, 2022, JBWK requested that the parties mediate the "bigger picture" and offered to waive mediation on the commercial use issue, but only if the Association first waived its own right to mediation. J.A. 530–31. The parties set a tentative date for mediation. But on September 28, 2022, the Association filed a second warrant in debt and instituted the present action. The parties do not dispute that the Association gave no notice of its claims and did not attempt to negotiate or mediate them before filing suit. And notably, JBWK did not waive its right to avoid litigation by utilizing those procedures before the Association sued. JBWK's offer to waive mediation was contingent upon the Association waiving its right first, which the Association did not do until October 14, 2022 -- more than two weeks *after* it filed its second warrant in debt. Accordingly, the Association's remaining claims are also waived, and the district court was correct to dismiss them with prejudice.

13

JBWK filed its own complaint in federal court in November 2022. Although JBWK also did not negotiate or mediate its own claims, the Association clearly waived its right to have JBWK submit its claims to mediation by instituting this lawsuit and asserting in its October 2022 email, "the parties have agreed to waive the mediation at this time." J.A. 537. That waiver is sufficient for us to reach the merits of JBWK's claims.

In sum, the Association failed to exhaust its claims by prematurely instituting both its initial lawsuit and the instant litigation. JBWK, by contrast, never expressly waived its right to exhaustion and attempted to mediate and filed its own claims only in response to the Association's lawsuit. Accordingly, we address only the merits of the issues raised by JBWK.

## B.
### Declarant

As to the merits, we must first determine whether and when JBWK became the Declarant. The relevant facts are undisputed. Baymark served as the initial Declarant. It had the power to designate a successor Declarant if two conditions were met: (1) the successor "[took] title to any portion of the property [in West Neck] for the purpose of development and/or sale;" and (2) the assignment was made "in a Recorded instrument" executed by Baymark. J.A. 59.

In April 2020, Baymark sold the golf course to WCC. WCC intended to develop the land into residential plots or to sell it -- most likely to the Association. In November 2020, the State of Virginia administratively dissolved Baymark, at which point Baymark legally ceased to exist. But in November 2021, Baymark nonetheless executed and

14

recorded an assignment that named JBWK as the successor Declarant but erroneously designated it as a Virginia LLC. In June 2022, Baymark executed and recorded an amendment to that assignment clarifying that JBWK is incorporated in New Mexico. In July 2022, JBWK merged with WCC and took formal ownership of the golf course. Finally, in August 2022, the State of Virginia reinstated Baymark's incorporation. Under Virginia corporate rules, reinstatement voids an earlier dissolution "as if the termination had never occurred." Va. Code Ann. § 13.1-754(C).

All told, the uncontested facts indicate that Baymark had assigned its Declarant rights to JBWK in a recorded instrument no later than June 2022. Consequently, when JBWK merged with WCC the next month and took ownership of the golf course, JBWK became the Declarant. And the Association does not point to any facts in the record that cast any reasonable doubt on that conclusion. The district court was thus correct to enter summary judgment for JBWK on this issue.

## C.
### Declaration Amendments

The next issue is whether the Association validly amended the Declaration in August 2022. Per the terms of the Declaration, it may be amended only with the Declarant's consent. After JBWK became the Declarant in July 2022, the Association passed the two amendments at issue without the knowledge or approval of JBWK. The amendments were, thus, procedurally deficient and unenforceable.

The Association argues to the contrary by claiming that there was no Declarant when the amendments passed because Virginia had administratively dissolved Baymark

15

before Baymark had named a successor Declarant. As we explain above, that is not so because Baymark's corporate existence was reinstated in August 2022, and under Virginia corporate rules, reinstatement voids an earlier dissolution "as if the termination had never occurred." Va. Code Ann. § 13.1-754(C). Therefore, the district court correctly entered judgment for JBWK on this issue.

## D.
### Commercial Use of the Property

The next issue we confront is whether JBWK can use the golf course as a commercial tree nursery. Here, too, the relevant facts are undisputed.

The Declaration states on its first page, "[a]ll property in [West Neck] . . . shall be owned, conveyed, and used subject to all of the provisions" of the Declaration. J.A. 55. Exhibit C of the Declaration, a list of "Initial Restrictions and Rules," states that land within West Neck "shall be used only for residential, recreational, and related purposes" and not for "[a]ny business, trade . . . or similar activity." *Id.* at 125, 127. That rule is "binding upon all [entities] having any right, title, or interest in any portion" of West Neck. *Id.* at 55. Thus, the Declaration bars JBWK from using the golf course for any commercial purpose.

JBWK's primary argument to the contrary is that Section 6.1 of the Declaration does not apply to JBWK because that section is "imposed only on 'Owners,'" and JBWK is not an "Owner" as that term is defined. Appellant's Br. at 23–24. Section 6.1 states, "[e]ach Owner shall maintain his or her Unit or Private Amenity, respectively, . . . in a manner consistent with the [Declaration]." J.A. 72. Even if JBWK's argument that Section 6.1

16

does not apply to it is correct, the point is irrelevant because the prohibition on commercial uses does not arise in Section 6.1. Rather, it is stated plainly in Exhibit C. And JBWK does not contest that it is subject to the relevant provisions contained in Exhibit C. Therefore, the district court was correct to enter summary judgment for the Association on this issue.

E.

Enforcement of the Declaration

The final issue we address is whether the Declaration grants the Association power to enforce its rules against the Declarant. The text of the Declaration neatly resolves this matter as well.

The first page of the Declaration, in Section 1.1, the "Purpose and Intent," states, "[a]n integral part of the development plan is the creation of [the Association] . . . to enforce this Declaration and the other Governing Documents." J.A. 55. Furthermore, Section 1.2 states, "[t]his Declaration . . . shall be enforceable by [JBWK], [the Association], any Owner, and their respective legal representatives, heirs, successors, and assigns." *Id.* at 55–56. And if that were not sufficiently clear to establish that the Association has enforcement authority, the Declaration also refers to the Association as "the *primary entity* responsible for enforcement of the Governing Documents." *Id.* at 74 (emphasis supplied). And the By Laws grant the Association "the power . . . to impose sanctions for *any* violation of the Governing Documents." *Id.* at 146 (emphasis supplied). Finally, as noted above, "[a]ll property in [West Neck] . . . shall be owned, conveyed, and used subject to all of the

17

provisions" of the Declaration. *Id.* at 55. Because the golf course is property within West Neck, it too is necessarily subject to "all of the provisions" of the Declaration. *Id.*

Yet, JBWK attempts to evade the Declaration's plain meaning by once again pointing to provisions that it claims limit the Association's enforcement power to residential property owners. To support this assertion, JBWK focuses on two specific provisions of the Declaration: Sections 8.4 and 11.3. Section 8.4 falls under the rubric of Article VIII of the Declaration, which concerns the Association's "Powers and Responsibilities." J.A. 78. Section 8.4 states, "[e]very Owner and occupant of a Unit shall comply with the Governing documents." *Id.* at 84. JBWK claims that this provision limits the Association's enforcement power to "Owners," which JBWK is not. Section 11.3 is encompassed within Article XI, which concerns the rights of the Declarant. Section 11.3 states, "[e]very Person that acquires any interest in [West Neck] . . . agrees not to protest, challenge, or otherwise object to . . . changes in uses . . . of property outside the Neighborhood[4] in which such Person holds an interest." *Id.* at 98. JBWK argues that the golf course is not a "Neighborhood" within the meaning of the Declaration, and thus the Association has no right to object to changes in the way JBWK uses the golf course. Citing to *Bott v. N. Snellenburg & Co.*, 14 S.E.2d 372, 374–75 (Va. 1941), JBWK further contends

---

[4] A "Neighborhood" in the parlance of the Declaration is a division of the West Neck development made up of Units and their owners who collectively share the costs and benefits of amenities, such as swimming pools, which are specific to each Neighborhood. The residents of each Neighborhood also elect voting members of the Association to represent the Neighborhood's interests.

18

that the more specific provisions in Sections 8.4 and 11.3 control over the more general provisions cited above, which grant the Association broad enforcement authority.

First, JBWK's argument as to Section 8.4 is unpersuasive. Virginia law does not hold merely that the specific controls the general, but instead that a more *specifically appliable* term controls over one that is more broadly applicable. *See Levine v. Employers Ins. Co. of Wausau*, 887 F.3d 623, 630 (4th Cir. 2018) ("Virginia follows the well-settled principle in contract law of applying specific provisions of a contract over more general provisions dealing *with the same subject matter*.") (emphasis supplied). Accordingly, the Association will have enforcement authority in *either* case. If JBWK is an "Owner" for the purposes of Section 8.4, then that provision grants the Association enforcement power over JBWK. But if Section 8.4 does not apply to JBWK, then it is not a more specifically applicable provision. Consequently, Section 8.4 does not control over the broad delegations of enforcement power to the Association found in Article I and Exhibit C, and there is no provision in the Declaration suggesting that the Association's enforcement power would not apply with equal force against JBWK.

Similarly, the Association has enforcement power over JBWK regardless of whether Section 11.3 is relevant to this dispute. The issue is not, as JBWK claims, whether the golf course is a Neighborhood. Rather, the issue is whether the Association "acquire[d] an[] interest" in West Neck within the meaning of Section 11.3. J.A. 98. The Association exists by virtue of the Declaration. Its interest in the community is not as a private property owner but as "[a]n integral part of the development plan" and "the *primary entity* responsible for enforcement of the Governing Documents." *Id.* at 55, 74 (emphasis supplied). Therefore,

19

if the Association acquired an interest in West Neck when it was created by the Declaration, that interest necessarily extends to the golf course because the golf course is part of the "development plan." *Id.* at 55. And since the Association has an interest in the golf course, it can enforce the Declaration's rules against the owner of the golf course. Alternatively, if the Association did not acquire an interest in West Neck, then Section 11.3 does not apply to it. In either case, the Association can enforce the Declaration's rules against JBWK.

As a result, here, too, the district court correctly granted judgment for the Association.

## IV.

For the foregoing reasons, the district court is

*AFFIRMED*.

20